was changed, to proceed under the will and decree, as an accepted arrangement, acquiesced in for many years for family reasons, powerful to preserve the family ties in unity and concord. Shimmel v. Morse, 57 App. Div. 434, 63 N. Y. Supp. 322, 68 N. Y. Supp. 1148. If, however, force is given to the Ohio decree and the evident acquiescence of the parties in interest, the distinction made between the specific legacy and the residuary must be recognized, and the balance of the former, less advancements, be credited as belonging to Mrs. Putnam, which she had the right to use up if she chose. Mrs. Putnam died September 30, 1900, leaving a will bequeathing and devising all her property to the son Israel. Judge Putnam died at Hong Kong November 28, 1899. On the 14th day of July, 1899, he conveyed as trustee to Mrs. Putnam an interest in the Arcade property, Saratoga Springs, which interest had been conveyed to him as trustee by the executor of the grandfather April 13, 1898. It is gravely urged that a recognition of the rights of the three children will cast a slur on the name of the husband, who was an honored justice of the supreme court of this state, and that his latest act indicated his individual construction that under the grandfather's will Mrs. Putnam should rightfully have all the property. This would not be of avail against the legal rights of the children, even were such an inference correct. It may, however, be easily seen that, conscious of advancing age and possible physical weakness necessitating a long sea voyage, Judge Putnam may have wished to leave the practical control to the wife, who was the mother of their children, knowing well that his act gave her no greater interest than she might possess, and put no obstacle in the way of the children asserting whatever right they had. Nor do I think any estate tail was created by the will. Such an estate is created in realty alone. There is no evidence in that will of an intent to tie up mixed real and personal property in such a way.

The trust having terminated by the death of Mrs. Putnam, the three sons are entitled to the property, except the specific legacy. An accounting should be had, and a reference to report the same, and the situation of the trust property and its equitable division. The securities in the deposit boxes of the Lincoln Safe-Deposit Company might remain there till the final judgment, with due arrangement for collection of interest coupons. All other questions are reserved to final judgment.

Ordered accordingly.

---

(34 Misc. Rep. 342.)

### UNIVERSAL TALKING–MACH. CO. v. ENGLISH.

(Supreme Court, Special Term, New York County. March, 1901.)

1. INJUNCTION—CONTRACT OF EMPLOYMENT—BREACH.
 Equity will not enjoin an employé having special knowledge or skill, and who refuses to render further services, from performing similar services for any other than the employer in violation of his contract, unless it is affirmatively shown by the employer that such skill cannot be supplied by others.

2. SAME—INVENTIONS OF EMPLOYE.
      Where an employé contracts to assign to his employer all inventions
   made by him during his employment, he will not be enjoined from using
   such inventions to the injury of his employer, where the evidence fails
   to show any invention made by the employé during the term of his
   employment.

Suit by the Universal Talking-Machine Company against John C.
English. Motion to continue temporary injunction. Denied.

Olney & Comstock, for the motion.
J. E. Ludden, opposed.

SCOTT, J. The defendant's contract with the plaintiff contained
four several and severable obligations on his part: First, to give
his personal services and devote his skill and attention, for the pe-
riod specified, to the exclusive service of the company in the mat-
ter of making sound records and copies thereof, and in designing
improved apparatus, and in developing and perfecting improved
processes for recording and reproducing sound; second, to vest in
and assign to plaintiff all inventions and improvements in the art
of sound recording and reproducing, or relating thereto, or capable
of employment therein, made by defendant since the 12th day of
June, 1899, as well as those of such description made by him during
the term of his employment by plaintiff; third, to fully disclose
to the authorized officials of the company any or all of the inven-
tions or improvements contemplated by the contract, together with
full descriptions, written or verbal or both, and all drawings, dia-
grams, or formulæ thereof, and full directions for making, using,
and practicing the same; fourth, not to disclose any of such inven-
tions or discoveries (i. e. those made since June 12, 1899) to other
than the duly-authorized officials or attorneys of the plaintiff. The
defendant has refused to complete this contract. He offers various
reasons in justification of his refusal, with which it is not neces-
sary to deal upon this motion. For the purpose of passing upon
the question now presented it may be assumed, without deciding,
that the defendant has no justification for his refusal to go on and
complete his contract according to its terms. When so much is
assumed, however, it does not necessarily follow that the plaintiff
is entitled to relief in equity, for in general the remedy for a breach
of contract is to be found in an action for damages. There are
cases, however, in which equity will intervene and afford injunctive
relief. One of these cases is correctly stated in the plaintiff's brief
by a quotation from a well-known text-book, as follows:

   "When one person agrees to render personal services to another which re-
quire and presuppose a special knowledge, skill, and ability in the employé,
so that in case of a default the same services could not easily be obtained
from others, although the affirmative specific performance of the contract is
beyond the power of the court, this performance will be negatively enforced
by enjoining its breach." Pom. Spec. Perf. (2d Ed.) § 24.

In other words, in a case such as is supposed by the writer above
quoted, while equity cannot compel the employé to devote his knowl-
edge, skill, and ability to his employer, it can forbid him to devote
them to the service of any other, and a portion of the relief asked

for by the plaintiff is that the defendant be enjoined from performing for any other the services which he has agreed to perform for plaintiff. It will be observed that in order to apply this principle to any particular case the servant must be possessed of special knowledge, skill, and ability, so that in case of his default the same service cannot easily be obtained from others. The plaintiff's business, as stated in the complaint, is that of manufacturing records of sound, and selling apparatus containing sound records and which reproduce sound, known as "zonophones" and "gramophones." The sound records made by plaintiff are stated to be what are known as "original" or "master" records, being flat discs of a hard composition on which are pressed lateral vibrations, which are the sound waves. These vibrations or waves are produced upon the discs by a needle, the movements of which are influenced by the sounds projected into a receiver or horn. These originals are then reproduced by an electrotyping process, and the electrotypes are used as a matrix or die for pressing duplicate discs. Defendant's especial skill and knowledge seems to have been—First, that he knew the composition of the disc on which the master record was traced; and, second, he had acquired a certain skill in so placing the singer, orator, or musician, with reference to the receiver or horn into which the sound was to be projected, as to produce the best results, and his sole employment by the defendant was to produce these master records. So far as concerns the composition of which the disc is made, it appears that he dictated the formula to an officer of the plaintiff at the time he signed the contract in question. So far as concerns the placing of the person producing the sound, he swears that before he left plaintiff's employ he fully and carefully instructed another employé who still remains with the plaintiff. This employé denies that he was taught by defendant, but how he acquired his present skill is immaterial. The important fact is that, notwithstanding defendant's defection, plaintiff is still able to produce master records, which the defendant swears, and plaintiff does not deny, are quite as good, if not a little better, than those which defendant made. It does not appear, therefore, that the same service that defendant agreed to render cannot readily be obtained from another, and the application for an injunction upon this ground cannot prevail. The plaintiff relies, however, upon another equally well established rule, which has been stated as follows:

"Where a person is the owner of valuable trade secrets, which were either discovered by an employé or necessarily disclosed to him while occupying a confidential relation towards the owner, and such employé has agreed to give his employer the exclusive property in and control over such inventions, and thereafter, in violation of such agreement, undertakes to make use of the same in such manner as to materially injure his employer's business, a court of equity will grant relief and enjoin the employé from making use of said knowledge to the prejudice of his employer."

Kodak Co. v. Reichenbach, 79 Hun, 184, 29 N. Y. Supp. 1143; Little v. Gallus, 4 App. Div. 569, 38 N. Y. Supp. 487.

The defendant by his contract did agree that all inventions and discoveries made by him during the term of his employment should belong to plaintiff, and that he would not impart them to any one

else.   It is not contended that plaintiff disclosed any trade secrets to defendant, and it is not made very clear that he himself discovered or invented anything during the period of his connection with plaintiff.   The plaintiff alleges very generally that defendant made some inventions or discoveries in the direction of improving the process of making records, but gives no details thereof, either by stating the nature of such inventions or discoveries, or their result or effect in improving the processes.   The defendant says that he has not, since he entered plaintiff's employ, learned anything new in reference to making sound records and copies thereof, or in designing improved processes for recording and producing sounds, and now knows no more on the subject than when he first entered plaintiff's employ; and he denies with emphasis that he has ever disclosed to any one, save plaintiff's officers and employés, any processes, apparatus, inventions, or improvements relating to the production of records, or that he has threatened to do so, or told any one that he intended to do so.   He states that he intends to go into business, but only in the manufacture and sale of pressed records which are not manufactured by plaintiff.   The only obligation assumed by defendant as to inventions, discoveries, and improvements was that plaintiff should be entitled to such as defendant might make while in plaintiff's employ,—that is, after October 12, 1899,—and that as to those he should make disclosure only to plaintiff's officers or attorneys.   As to anything that he had invented or discovered prior to October 12, 1899, he was left free to make such use as he saw fit.   In view of plaintiff's total failure to point out or designate any invention or discovery which it alleges that defendant has made since the date fixed by the contract, coupled with defendant's positive denial that there are any such, the plaintiff has not made out a case justifying the continuance of the injunction pendente lite under the rule of law secondly above stated.   The motion to continue the injunction must be denied, and the temporary injunction vacated, with $10 costs to defendant.

Motion denied, and temporary injunction vacated, with $10 costs to defendant.