(73 App. Div. 447.)

GEO. A. KESSLER & CO. v. CHAPPELLE.

(Supreme Court, Appellate Division, First Department.   June 20, 1902.)

1. INJUNCTION—CONTRACT OF EMPLOYMENT.

Where the services of a servant of a wine house have no special, unique, or extraordinary character, except that arising from his large expenditures, and others occupy the same relation and perform similar duties for the master, the breach of a contract to act exclusively for the master for a number of years will not be enjoined, though the master has no adequate remedy at law, because of the practical impossibility to determine the damages resulting from the breach.

2. CHANGE OF MASTERS—RIGHTS OF SERVANT.

Where a servant recognizes a corporation as the successor of his master, and continues in its employ, the contract of employment is as binding on him, in favor of the corporation, as if the original master had continued in such capacity.

Patterson, J., dissenting.

Appeal from special term.

Injunction by Geo. A. Kessler & Co. against Emanuel S. Chappelle. From an order denying a motion to continue a preliminary injunction, the plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

E. Lauterbach, for appellant.

M. Meyer, for respondent.

VAN BRUNT, P. J.   On the 2d of December, 1901, the copartnership of Geo. A. Kessler & Co. were the agents of the firm of Chandon & Co., successors to Moet & Chandon, of Epernay, France, to sell in the United States of America the champagnes and wines manufactured and produced by said firm of Chandon & Co.   Upon said date the said copartnership entered into an agreement in writing with the defendant, by which agreement it was provided that said copartnership should be exclusively entitled to the services of the defendant for the period of five years, and the defendant agreed that he would not for that period engage himself with any wine house or dealer in champagnes in any capacity whatever, except with said copartnership of Geo. A. Kessler & Co.; the defendant further agreeing by such contract, during said time, and while in the employment of said copartnership, to devote himself exclusively to such employment, and not to go into any other business whatsoever.   On the 13th of December, 1901, the plaintiff, a corporation, acquired and succeeded to the business of said firm of Geo. A. Kessler & Co., and since said 13th of December, 1901, has been engaged in the business of selling champagne wines as successors to said firm; and the defendant has rendered services to the plaintiff under and pursuant to said agreement, and has accepted from the plaintiff the sums of money set forth in said agreement as compensation for such services, and has accepted the plaintiff as the party bound by the contract for which such services were to be rendered since the 13th of December, 1901.   On the 31st of December, 1901, the defendant entered into a written agreement with Geo. A. Kessler, by virtue of the

provisions of which the defendant agreed not to engage in any business of any kind whatsoever which might be in any wise detrimental to the interests of the corporation of Geo. A. Kessler & Co., and especially agreed that he would not assist, directly or indirectly, any person, firm, or corporation importing, selling, or otherwise dealing in any champagne wines other than the wines manufactured, produced, and sold by Chandon & Co., the agency of which wines was controlled by said corporation of Geo. A. Kessler & Co. The consideration for this agreement with Geo. A. Kessler was the transfer by Kessler to the defendant of 25 shares of the capital stock of the corporation of Geo. A. Kessler & Co. The said last-named agreement contained other provisions, which it is not necessary here to mention. The evidence also shows that a large number of other persons were employed to perform similar duties by said firm and corporation of Geo. A. Kessler & Co. The defendant continued in the service of said corporation of Geo. A. Kessler & Co., and performed the duties which were confided to him in a more or less satisfactory manner; and on the 30th of April, 1902, he gave notice to Geo. A. Kessler that the firm of Frederick Ce Bary & Co., the plaintiff's most important rival in business, had offered him a salary in excess of that which he was receiving under his contract with the plaintiff, and a large cash bonus in addition, if he would leave the plaintiff's employment and enter their employment, and act in furthering their wines, to the detriment of the wines dealt in by the plaintiff; and he thereupon announced his intention of accepting that offer, and left the plaintiff's premises, and returned said 25 shares of stock to Kessler. Thereupon this action was commenced, and a preliminary injunction was applied for.

The question upon the motion before the court below was whether such injunction should be continued. The court below denied the motion to continue the injunction, upon the ground that the defendant's services were not special, unique, or extraordinary, within the adjudged cases, and that injunctive relief must therefore be withheld. In this view of the law we concur. There is nothing in these papers which tends to show any special, unique, or extraordinary services upon the part of the defendant, except, perhaps, in his large expenditures, which seem to have increased his value as a salesman. On the contrary, they show that others occupy the same relations to the firm, and are performing similar duties. While the rule undoubtedly is that the rendition of skilled services to others may be prevented by injunction, yet we fail to find any rule which allows an injunction of this kind unless there is something special, unique, or extraordinary in the services which the defendant, under his contract, is called upon to render.

The claim upon the part of the defendant that his contract with Geo. A. Kessler & Co. was a personal one is undoubtedly well taken; but it appears from the papers that the corporation of Geo. A. Kessler & Co. succeeded the firm of Geo. A. Kessler & Co. almost immediately after entering into this contract, and that the defendant recognized the corporation as the successor of the firm; and therefore by his recognition of the assignment of the agreement by the

firm to the corporation he became as much bound to the corporation as he would have been to the firm had it continued.

A variety of cases have been cited, but none of them have any bearing upon the case at bar. The case of Rousillon v. Rousillon, 14 Ch. Div. 351, is referred to as an authority directly in point; but an examination of that case shows an entirely different state of facts. The defendant in that case engaged in the champagne business, which he had agreed not to do. He bought his wines in France, put his own labels upon them, with the same name as the plaintiff's and entered directly, for his own personal advantage, into the business of importing and selling wines in Great Britain, which by his contract he had expressly undertaken to refrain from doing. That case is not similar to the one at bar. The defendant in this action is not going into a champagne business on his own account. He is being hired by another house in his capacity as salesman, and as salesman only.

It is undoubtedly true that the plaintiff has no remedy at law, because whatever damage it may sustain by reason of the breach of this agreement it is almost impossible to regulate; and, if there was any principle upon which injunctive relief could be granted, the plaintiff would undoubtedly be entitled to it. But as already seen, the case is not one in which injunctive relief can be given, and the order appealed from must therefore be affirmed, with $10 costs and disbursements. All concur, except PATTERSON, J., who dissents.