HARRY B. ANDREWS

*v.*

EDWIN C. KINGSBURY.

*Opinion filed October 24, 1904.*

1. CONTRACTS—*when agreement is binding between the parties.* An agreement made by a vendor with the vendee as part of the consideration for a sale is binding as between the parties notwithstanding the vendor is acting for an undisclosed principal, where that fact was unknown to the vendee and all papers connected with the sale run in the name of the ostensible vendor.

2. SAME—*when agreement in partial restraint of trade is valid.* An agreement, made as part of the consideration for the sale of a newspaper business, that the vendor will not engage in the newspaper business in the same place, in any capacity, for himself or any one else, for a period of five years, if the vendee remains in the business that long, is valid.

212—7

3. EVIDENCE—*what testimony not material in action to enjoin breach of contract.* In an action to enjoin breach of contract not to engage in the newspaper business in a certain city in any capacity for a certain period, proof that the newspaper defendant proposes to manage occupies a different field from plaintiff's paper is not material and is properly excluded.

4. INJUNCTION—*equity may enjoin breach of negative covenant.* Equity may enjoin a breach of an express negative covenant, even though the same may occasion no substantial injury or though there be an adequate remedy at law.

5. APPEALS AND ERRORS—*manifest clerical error will not reverse decree.* A manifest clerical error in continuing injunction against a breach of a negative covenant longer than the period covered by the covenant may be corrected on appeal, without reversal.

*Andrews* v. *Kingsbury,* 112 Ill. App. 518, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Richland county; the Hon. P. A. PEARCE, Judge, presiding.

At the April term, 1903, of the circuit court of Richland county the appellee, Edwin C. Kingsbury, filed his bill to restrain the appellant, Harry B. Andrews, from engaging in the newspaper business in the city of Olney, either as proprietor, editor, manager, or in any way whatever, either for himself or anyone else, for a period of five years, as provided in a certain alleged contract executed between the parties. A temporary injunction was issued as prayed, and upon a hearing it was made perpetual for the period of five years from November 2, 1901. An appeal was prayed to the Appellate Court for the Fourth District, where the decree of the circuit court was affirmed, and this appeal has been taken.

On November 2, 1901, the appellant made a bill of sale of the printing plant of a certain newspaper known as the *Olney Advocate* to appellee, and on the sixth of the same month executed the following instrument:

"I, Harry B. Andrews, having sold the *Olney Advocate,* a weekly newspaper published at Olney, Illinois, and trans-

ferred all my right, title and interest to the same, including good will, to E. C. Kingsbury, I hereby agree not to engage in the newspaper business in the city of Olney, either as proprietor, editor, manager, or in any way whatever, either for myself or anyone else, for the period of five years from the date of this agreement, provided that E. C. Kingsbury remains in the newspaper business in Olney for that length of time."

Until about December 2, 1902, Andrews kept the terms of said contract, but on that date purchased an interest in a newspaper in the city of Olney known as the *Olney Times,* and shortly thereafter an article appeared in that paper stating that "with this issue of the *Olney Times* the business and editorial management of the Times Printing Company will be under the direction and control of H. B. Andrews." Immediately after the appearance of that article, and after Andrews had taken charge of the *Olney Times,* this bill for an injunction was filed.

Appellant, in his answer to the bill, set up that he was not the proprietor or owner of the *Olney Advocate* at the time of the sale to the complainant, but that it was owned by his wife, and that he was merely the manager for her; that the sale of the paper was negotiated by one H. H. Kingsbury, acting as complainant's agent, and that after the completion of the sale and transfer of the property the said agent wrote the contract above set forth and appellant signed it; that it was not part of the sale of the property, and was signed by the defendant without the knowledge of his wife; that the newspaper known as the *Olney Times* occupied a different field from the *Olney Advocate,* and they were in no sense competitors.

JOHN LYNCH, Jr., H. G. MORRIS, and W. F. FOSTER, for appellant.

ALLEN & FRITCHEY, and S. J. GEE, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The first ground of reversal insisted upon is, that at the time of the sale the *Olney Advocate* belonged to the wife of appellant, and his agreement not to engage in the newspaper business had nothing to do with the sale and was therefore without consideration. It is not denied that the bill of sale was signed by him, and by it he expressly warranted his title to the property. The name of his wife does not appear in the instrument. The money paid for the plant was paid to him and the notes and mortgage executed to secure the deferred payments were made to and delivered to him. The appellee testified that about the 28th day of August, 1901, he had a conversation with appellant, in which he proposed, for the consideration of $4000, to sell his paper and agree not to go into the newspaper business again in the city of Olney, and that on the following day he made the same proposition, and again in the latter part of October submitted a written proposition to appellee making a similar offer. He also testifies that the same negotiations continued from the 29th day of August, 1901, to the final consummation of the sale and purchase, and that it was the distinct understanding between the parties that appellant would not engage in the newspaper business in Olney for a period of five years; that when asked to sign the agreement he did so promptly, without any conditions or objections. This testimony is not overcome by any counter-proof. It clearly sustains the allegations of the bill, and proves beyond all question that as between these parties the property belonged to the appellant and that the agreement was executed as a part of the consideration for the sale of the same and is binding upon appellant.

It is next insisted that the contract is invalid because it is an unreasonable restraint of trade and against public policy. The law is well settled that contracts in total restraint of trade are void for the reason that they are injurious to the public, depriving it of the industry of the party restrained, and also because of the injury to the party

himself by being deprived of the opportunity to pursue his avocation for the support of himself and family; but a contract which is only in partial restraint of trade and is reasonable in its provisions as to time and place, and supported by a sufficient consideration, is valid, and the restraint is held to be reasonable whenever it is such, only, as affords a fair protection to the interests of the one in whose favor it is made. (3 Am. & Eng. Ency. of Law, 882; *Hursen* v. *Gavin,* 162 Ill. 377; *Union Strawboard Co.* v. *Bonfield,* 193 id. 420; *Consolidated Coal Co.* v. *Schmisseur,* 135 id. 371.) In this case the contract provided that the appellant would not engage in the newspaper business in the city of Olney for a period of five years. It was thus limited as to time and place, and appears to be reasonable in all its terms and conditions. We see no sufficient reason for holding it unreasonable.

It is next urged that the court erred in refusing to admit competent testimony offered by appellant. It is said that on the hearing he offered to prove the distinctive characters of the *Olney Advocate* and the *Olney Times* as to their respective classes of business and sources of patronage, and therefore no financial injury would result to appellee, which evidence the court refused to admit. The record does not sustain the contention except as to an offer to prove the politics of the papers. But, in any view, the evidence was wholly immaterial. Appellant entered into a contract not to engage in the newspaper business in the city of Olney for five years. The *Olney Times* was a newspaper published in the city of Olney, and the management of that paper by appellant was therefore in open violation of the terms of the contract, which was the only material issue in the case. The testimony was therefore properly excluded.

The general rule that a writ of injunction should only issue where there is an unquestionable right and where irreparable injury will be suffered, and there is no adequate remedy at law either on account of the insolvency of the de-

fendant or for some other cause, is not applicable to this case. Courts of equity will, and frequently do, interpose by injunction, thereby indirectly enforcing the performance of negative covenants by prohibiting their breach; and where there is an express negative covenant, courts of equity will entertain bills for injunctions to prevent their violation, even though the same will occasion no substantial injury or though the remedy be adequate at law. *Consolidated Coal Co.* v. *Schmisseur, supra; Hursen* v. *Gavin, supra.*

Nor is the position that the decree below is broader than the terms of the contract, for the reason that appellant is enjoined from engaging in the newspaper, publishing or printing business in the city of Olney while the appellant only agreed not to engage in the *newspaper business* in the city of Olney, sustained by the abstract of the record. The terms of the injunction are, that "the injunction in the above entitled cause be and the same is hereby decreed to be in full force, etc., as prayed in complainant's bill." The abstract as presented to this court does not show that the injunction ordered is, in its terms, broader than the contract. If that fact appears from the record, counsel for appellant should have shown it by the abstract.

It is finally insisted that the decree continues the injunction in force for one year longer than the terms of the agreement authorized. In the decree there is a manifest clerical error, the injunction being continued until the expiration of five years from November 2, *1902*, instead of *1901*. This is made manifest by the recital in the decree, "date of sale" immediately following the figures 1902, and the language, "as prayed in complainant's bill." The decree may be modified by simply changing the date 1902 to 1901, thus making the injunction continue until November 2, 1906.

There is no reversible error in this record, and the decree of the circuit court will be affirmed, with the above slight modification.                    *Decree affirmed.*