## TAYLOR IRON AND STEEL COMPANY

### *v.*

### WESLEY G. NICHOLS et al.

[Decided September 27th, 1905.]

N. was employed by the complainant to perform any duties which might be assigned to him, and agreed to keep inviolate its trade secrets. While so employed, he had been taught complainant's secret processes for the manufacture of steel. The defendant company, a competitor, induced N. by improper means to break his contract with the complainant and enter its employ for the purpose of imparting such trade secrets to it. —*Held*, that the complainant is entitled to a preliminary injunction against both defendants, restraining the disclosure of such trade secrets, and also against the defendant corporation, restraining it from continuing N. in its employ during the term of his contract with complainant; but it is not entitled to an injunction against N., restraining him from entering the employment of another during the term contracted for, because the contract did not provide for special services.

On bill for injunction.

*Mr. John R. Hardin* and *Mr. Richard V. Lindabury,* for the complainant.

*Mr. Charles L. Corbin,* for the defendants.

BERGEN, V. C.

The questions presented arise under an order to show cause why a preliminary injunction should not issue restraining the defendant Nichols from divulging, during the term of his alleged engagement with the complainant, or afterwards, information, commonly denominated "trade secrets," acquired by him while in complainant's service, and also from devoting his time, skill and labor, during the term of his engagement with the complainant, to the service of the defendant American Brake Shoe and Foundry Company, and the defendant last named enjoined from employing or continuing in its service the defendant Nichols during the life of his contract with the complainant, and from using or applying, directly or indirectly, any information relating to or regarding any process of steelmaking or moulding, the special property of the complainant, which it had communicated to the defendant Nichols under an agreement with him that he would not communicate to anyone such "trade secrets." From the affidavits read on the return of the order, it appears, and I so find, that the complainant had discovered a process for making steel of such superior character as to substantially defy competition in the particular grade or class of steel, manufactured according to its invented or discovered method or formula, resulting in a widespread demand for the article and the building up of a large and lucrative business by the complainant on account thereof; that such process or formula was known only to the officers of the complainant and to such of its trusted employes as were taught the same under promise not to reveal the secret method employed; that in March, 1896, the defendant Nichols entered the service of complainant under an express agreement not to make known to any person, except the officials of the complainant, any information or knowledge of the pro-

cess, system, mixture, or combination of mixtures, used by the complainant in the manufacture of its products; that thereafter the defendant Nichols was taught by complainant all of its secret processes and methods used in the manufacture of steel, and that by means thereof he acquired special knowledge and skill, and became and was, until he left the complainant's service, about July 31st, 1905, such a trusted and skillful employe, because of his aptness and thorough knowledge of the business secrets of the complainant, that it will require several years to instruct another to perform the service; that in March, 1905, the defendant company, by deceptive practices, obtained the admission of one E. J. Snow, its agent or employe, to the complainant's works at High Bridge, the permission to enter the works excluding access to the foundry, where the secret processes were being used; that while within the complainant's works, under the guise of a friendly visit, and without the knowledge of the officers of the complainant, Snow procured a message to be sent to Nichols, who was at work in the foundry, that he (Snow) wished to see him, and having procured an interview, there and then, endeavored to induce the defendant Nichols to leave the employment of the complainant and take service with the defendant company, at a salary of $7,000 a year, for a term of years, and a bonus of $10,000, which offer the defendant Nichols then declined, although the wages then paid him by the complainant was only $2,500 a year; that on the 19th day of March, 1905, the defendant Nichols entered into a written agreement with the complainant, by the terms of which he contracted to remain in the service of the complainant for five years, at an annual salary of $3,000, and the additional sum of $1,500 annually, to be paid to him at the termination of the agreement, should he so long live, and in the event of his death prior thereto, such part of the total of $7,500 as might then have accrued should be paid to his lawful representatives; that the second clause of said agreement reads as follows:

"(2) The said Wesley G. Nichols agrees that he will devote his entire time, skill, labor and attention, during the term of this agreement, to the service of the Taylor Iron and Steel Company, and that he will at all times faithfully perform the duties that may be assigned to him by the

management of the said Taylor Iron and Steel Company to the best of his skill and ability for the compensation aforesaid, and that he will not at any time, directly or indirectly, during the term of this agreement, or afterwards, divulge to any person, firm or corporation, except to the Taylor Iron and Steel Company and its officers, any information of any nature, now known to him or hereafter acquired by him, during the term of this agreement, relating to or regarding any processes of steelmaking or moulding, or treating steel, that may have been, is now, or may be hereafter, during the term of this agreement, used in the works of the Taylor Iron and Steel Company, and that he will at all times hold inviolate the treatment, processes and secrets known to or used by him in the works of the said Taylor Iron and Steel Company ;"

that notwithstanding his agreement, Nichols, on July 31st, 1905, left the complainant's service and entered, or has arranged to enter, into the service of the defendant company; that the defendant corporation induced Nichols to leave the complainant, with full knowledge of the agreement between Nichols and the complainant, for the purpose of obtaining the benefit of his knowledge of complainant's trade secrets, with which he had been entrusted, and it was for such knowledge that they were willing to pay such an extraordinary price, an amount so great as to negative the claim of the defendant that Nichols had no unusual knowledge, and was only the usual mechanic, with ordinary experience.

The conduct of the officers of the defendant corporation in thus tempting the cupidity of Nichols can lead to but one conclusion, and that is a determination to obtain the trade secrets of the complainant by inducing its trusted servant with a bribe of unusual proportions to betray his master.

The relief sought by the complainant is the restraint by injunction of the defendant Nichols from at any time divulging the trade secrets of the complainant taught to and obtained by him while in its employ, and also from entering the service of any person other than complainants during the term of his said agreement, and particularly from devoting any part of his time, during the period covered by his contract, to the service of the defendant corporation, and further, that said corporation be enjoined from employing or continuing to employ the defendant Nichols during the term for which he has contracted with the complainant, and from using or applying, directly or indi-

rectly, in the conduct of its business any of complainant's trade secrets obtained or that may be obtained by it from Nichols.

The complainant's right to a restraining order, so far as its trade secrets are concerned, was not seriously disputed on the argument, and upon well-settled principles the complainant is entitled, on this branch of the case, to the relief·sought against both defendants. *Stone* v. *Grasselli Chemical Co., 65 N. J. Eq. (20 Dick.) 756.*

The jurisdiction of this court to restrain Nichols from serving another during the term of his contract, or from entering the service of the defendant company, and the right to enjoin that company from employing Nichols, is denied by the defendant company. Nichols declined to appear and subject himself to the jurisdiction of this court in response to the order to show cause why a preliminary injunction should not go, but counsel for the appearing defendant, while protesting that he in no way represented Nichols, raises the question of the right of this court to restrain Nichols from accepting employment with the defendant company as a basis for his argument on behalf of his client.

Two propositions are presented, and will be considered separately.

*First.* Has this court the authority to restrain Nichols from entering the employment of any other master than the complainant during the term contracted for?

*Second.* May this court lawfully restrain the defendant company from employing Nichols during that period?

The complainant attempts to support the first proposition under the authority of *Lumley* v. *Wagner, 1 De G. M. & G. 604,* claiming that the qualifications contracted for are special and unique. I am of opinion that the affidavits show that the acquirements of the defendant Nichols are of that character, the result of years of special training given him by the complainant, and that the injury suffered by it because of the violation by Nichols of his agreement, if we accept complainant's construction of its terms as to the grade of service, cannot readily be ascertained or compensated by damages at law, and if this branch

35

of the case was free from other objections, the rule in *Lumley* v. *Wagner, supra,* should be applied.

The first difficulty we meet is that in *Lumley* v. *Wagner* the contract expressly describes the character of the work contracted to be performed, while in the contract under consideration Nichols only agrees "that he will at all times faithfully perform the duties that may be assigned to him by the management" of the complainant. To enjoin Nichols in the terms applied for means a negative enforcement of the specific performance of a contract, which the court will not affirmatively decree shall be performed, for want of power to make such an order effective. The negative enforcement of contracts by restraining the defendant from acts other than those which will result in a specific performance of his agreement is a harsh proceeding to be cautiously exercised within well defined limits, and only when, upon a fair construction of the contract, it affirmatively appears that the services agreed to be rendered belong alone to that class which are properly described as special, unique and extraordinary. Whatever may have been the intention of these parties, I must be controlled by their written expressions, and they only require from the defendant Nichols the performance of such duties as may be assigned to him by his employers, which they may change from day to day. The defendant did not contract in terms for special services, such as the law recognizes to be a ground for equitable interference.

The second objection raised by the defendant is that this contract contains no agreement binding the defendant not to enter into the service of another, as in *Lumley* v. *Wagner, supra,* to which complainant replies that an agreement to devote one's entire time to a service implies a covenant not to serve another during the period covered by the contract, and in support of this cites the *Lumley Case,* and also *Montague* v. *Flockton, L. R. 16 Eq. 189.* These cases have been the subject of much discussion, and the right to imply a negative covenant frequently doubted, and sometimes rejected, by the courts of this country, and in the English courts the case of *Montague* v. *Flockton, supra,* has been overruled, and *Lumley* v. *Wagner* interpreted as being lim-

ited in its application to contracts having an express negative covenant. *Whitwood Chemical Co.* v. *Hardman, 2 Ch. Div. 416 (1891).* In the case last cited, the vice-chancellor, on the authority of the *Lumley Case,* allowed the injunction restraining defendant from giving less than his whole time to one with whom he had contracted so to do. The contract then considered contained no negative covenant. On appeal from his decree it was reversed, the court, in its opinion of reversal, saying: "I cannot read the decision of Vice-Chancellor Malins without seeing that he was under the impression that Lord St. Leonards, in *Lumley* v. *Wagner,* would have granted the injunction even if the negative clause had not been in the contract. This was a mistake. Lord St. Leonards was very clear and explicit on that subject. He said distinctly he would not have done it in the absence of that negative clause." The general rule that equity will not decree specific performance of an agreement for personal services, nor effectuate it by indirection, is subject to but few exceptions, within which the present case does not fall.

The second proposition, can the defendant company be enjoined from employing Nichols, seems to me to stand on a different ground and to be governed by other considerations and equitable rules, for between complainant and the defendant company no question of specific performance arises. This defendant, taking advantage of a friendly courtesy extended by one competitor to another, attempts to bribe a trusted servant to betray his master, and finally succeeds in its effort, and with knowledge of the terms of the servant's contract with the complainant, its officers advised the servant that he could not be restrained by injunction from entering their service. The surreptitious attempt to entice this servant, the extraordinary advance in wages offered, the advice that he might break his solemn agreement without fear of legal restraint, and the repeated failures of the defendant company to produce a grade of steel equaling that of the complainant, made by processes known to Nichols, point irresistibly to the conclusion that the sole purpose of the defendant is to obtain, through Nichols, the benefit of the secret processes and methods of the complainant. In other

words, it is the intention of these defendants to fraudulently obtain the property of the complainant. The theory upon which the court refuses to decree the specific performance of a contract for personal services rests alone upon the inability of the court to supervise and carry out a decree of that character, but no such obstacle is presented when, under circumstances disclosed in this case, one defendant is enjoined from employing another, who, with the property of his former master in his possession, is to be engaged under conditions which lead all reasonable minds to the conclusion that the sole purpose and object of such employment is to enable the wrong-doer more efficiently to obtain the benefit of stolen property. The defendant company is a corporation of this state, amenable to its laws, and subject to the decree of this court. Concisely stated, the situation is this: The defendant induces a trusted employe to walk off with complainant's property and take it beyond the jurisdiction of this court, where he carefully remains, ready, if permitted, to enter the service of his partner in the perpetration of a fraud, and by the use of complainant's property, in ways difficult to discover, and perhaps entirely undiscoverable, deprive the complainant of the fruits of years of industry and skill. The whole case bristles with evidence that these defendants intend to wrong the complainant, against the perpetration of which it is entitled to protection, and an efficient part of the protection is to prevent any act which will make the accomplishment of the wrong easy and less difficult. To restrain the defendant company from employing the unfaithful servant for the purpose so clearly disclosed in this case can work no injury to it, for if the special knowledge which Nichols has of complainant's secret processes is not to be used, such ordinary services as the servant may lawfully render can readily be secured elsewhere. The injury to the complainant, if its valuable trade secret and processes are disclosed to a rival in business, will be irreparable, and temporizing with the power which the court possesses to prevent it does not appeal to a court of equity. The enticing away of a servant, or the harboring of one, in duty bound to serve his master is an actionable wrong, and the employment of such servant is strong, if not conclusive,

evidence of the guilt of the party charged, and while ordinarily the injured party may be confined to an action at law, with compensatory damages, there is no reason why a court of equity may not restrain the perpetration of the threatened injury when it clearly appears that to permit the enticer to employ and harbor the servant will work an irreparable injury to the master to whom the duty is due. If the injury is one subject to an action at law, the preventive power of a court of equity should be exercised to protect the property of the complainant from substantial destruction when damages at law will not afford a sufficient remedy. "An ounce of prevention is worth a pound of cure."

I will advise a preliminary injunction restraining the defendant Nichols from divulging or disclosing, directly or indirectly, during the term of his written agreement, or afterwards, any information of any nature now known to him, relating to or regarding any process of steelmaking of a secret, confidential nature, taught to, acquired by or used by him in the making, moulding or treatment of steel while in the employ of the complainant, and also restraining the defendant American Brake Shoe and Foundry Company from using or applying, directly or indirectly, any information of any nature already communicated to or acquired by it, or hereafter to be communicated to or acquired by it, directly or indirectly, by, through or from the said Wesley G. Nichols, relating to or regarding any secret process of steelmaking or moulding used by the complainant, and from using the treatments, processes and secrets belonging to the complainant which the said Nichols may have been taught, acquired or discovered while in the complainant's service, which Nichols may have or shall hereafter communicate to the defendant company, and further restraining the American Brake Shoe and Foundry Company from continuing in its employment or from hereafter employing the said Wesley G. Nichols, during the term covered by his written agreement with the complainant, in any service connected with the treatment, making or moulding of steel of the class, grade or character manufactured by the complainant, under the supervision of Nichols, while in its employ.