[No. 9433.  Department Two.  June 27, 1911.]

COLUMBIA COLLEGE OF MUSIC AND SCHOOL OF DRAMATIC ART, *Appellant*, v. KARL E. TUNBERG, *Respondent*.[1]

INJUNCTION—BREACH OF CONTRACT—PERSONAL SERVICES—ENGAGING IN OTHER EMPLOYMENT.  Breach of a contract to give defendant's personal services in a school of music for a term of years will not be enjoined where the services were not so special or extraordinary that they could not be supplied elsewhere, and another teacher was found to take defendant's place without materially impairing the efficiency of the school.

SAME—CONTRACT FOR GOOD WILL.  Where a teacher of music was employed to teach in a school for a specified term and agreed not to teach elsewhere and to devote his best efforts to promoting the school, he will be enjoined from soliciting clients of the school and invading its good will during the term, upon his leaving the school and setting up business for himself.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered October 26, 1910, upon granting a nonsuit, dismissing an action for an injunction.  Reversed.

*George Olson* (*Edward Judd*, of counsel), for appellant.

*Roney & Loveless*, for respondent.

CHADWICK, J.—Respondent was employed by appellant to teach music in its school at Seattle, for a term of two years beginning September 1, 1909.  In consideration of fifty per cent of all individual tuitions, respondent agreed:

"To give his entire time and attention, and devote his best efforts as may be required during the life of this contract, in giving instructions to such pupils as shall be assigned by the Columbia College of Music & School of Dramatic Art, to said party of the second part.  The said party of the second part agrees to devote his best efforts in promoting the interest of the said Columbia College of Music & School of Dramatic Art, and to give his services in public on any occasion when the best interests of the said college may demand."

[1]Reported in 116 Pac. 280.

It was also agreed:

"That the said party of the second part shall not engage himself unto nor connect himself with any other musical organization requiring pupils unless they become enrolled as regular students of said Columbia College of Music & School of Dramatic Art, and will not teach in the city of Seattle save and except in the said college during the life of this contract."

Respondent entered upon the performance of his contract and so continued until August 1, 1910, when he resigned and refused to longer fulfill his obligations. It appears that, after respondent had begun his work, appellant changed the form of some of its contracts so that, instead of charging a fixed sum for a lesson, it obligated itself to give lessons for a year or a fractional part of a year for a stipulated sum. Respondent claims that, at the time of severing his relations with appellant, he had not been paid all that was his due on these contracts, and it is admitted that $23 would have been due him upon an accounting. At the same time he had overdrawn his account $179. Another teacher was employed to take his place, and so far as the testimony shows, the efficiency of the appellant's teaching force was not materially impaired. Respondent set up a studio, and has solicited business from the clients and pupils of appellant.

While the case below went off on a nonsuit, there is enough in the record to indicate that respondent claims that money due on these annual contracts had been dishonestly withheld, and it was for that reason he broke his contract. It does not appear that any proper demand was ever made for an accounting, or that any offer was made to pay the balance due appellant. We shall not pursue this inquiry, for although we are of opinion that respondent erroneously believed that he was bound to justify his act by reference to some supposed wrong, we find the law to be that he might have quit his employment without excuse and without subjecting himself to an action for damages. No damages are claimed in this

action, but appellant has asked for an injunction restraining respondent from teaching or from giving lessons upon the piano in the city of Seattle, from the time the action was instituted until the 1st day of September, 1911, and for general relief. The rule is well settled that a court will not enjoin the breach of a contract for personal services, unless it is alleged and proven that the services of the contracting party are special, unique, or extraordinary, or the services are of such a character that they cannot be supplied elsewhere with reasonable effort, or the act is such that it cannot be done by another. 22 Cyc. 857, and citations thereunder; *Universal Talking Machine Co. v. English*, 34 Misc. 342, 69 N. Y. Supp. 813; *Rogers Mfg. Co. v. Rogers*, 58 Conn. 356, 20 Atl. 467, 18 Am. St. 278, 7 L. R. A. 779; *Cort v. Lassard*, 18 Ore. 221, 22 Pac. 1054, 17 Am. St. 726, 6 L. R. A. 653; *Taylor Iron & Steel Co. v. Nichols*, 70 N. J. Eq. 541, 61 Atl. 946, 65 Atl. 695; *Sternberg v. O'Brien*, 48 N. J. Eq. 370, 22 Atl. 348; *Carter v. Ferguson*, 36 N. Y. St. Rep. 1, 12 N. Y. Supp. 580; *Strobridge Lith. Co. v. Crane*, 35 N. Y. St. Rep. 473, 12 N. Y. Supp. 898; *Johnston Co. v. Hunt*, 66 Hun 504, 21 N. Y. Supp. 314; *Kessler & Co. v. Chappelle*, 73 App. Div. 447, 77 N. Y. Supp. 285; *Chain Belt Co. v. Von Spreckelsen*, 117 Wis. 106, 94 N. W. 78; *Gossard Co. v. Crosby*, 132 Iowa 155, 109 N. W. 483, 6 L. R. A. (N. S.) 1115; *Simms v. Burnette*, 55 Fla. 702, 46 South. 90, 16 L. R. A. (N. S.) 389; *Philadelphia Ball Club v. Lajoie*, 202 Pa. 210, 51 Atl. 973, 90 Am. St. 627, 58 L. R. A. 227; *Duff v. Russell*, 133 N. Y. 678, 31 N. E. 622.

Upon oral argument this rule is admitted, but it is contended that, although respondent might sever his relations with appellant and leave it remediless to compel his future service or to restrain his employment by another, yet his conduct has been such as to bring him within the rule of those cases which hold that one who covenants that he will not engage in a particular business for a certain limited time for a consideration may be enjoined if he breach his contract.

These cases usually arise where an established business has been sold, the seller's agreement to remain out of the trade for a time being a part consideration for the sale. *Andrews v. Kingsbury*, 212 Ill. 97, 72 N. E. 11; *Spier v. Lambdin*, 45 Ga. 319; *Brown v. Kling*, 101 Cal. 295, 35 Pac. 995; *Downing v. Lewis*, 56 Neb. 386, 76 N. W. 900; *Gordon v. Mansfield*, 84 Mo. App. 367; *Boiley v. Collins*, 59 N. H. 459; *Carter v. Alling*, 43 Fed. 208; *McCaull v. Braham*, 16 Fed. 37; *Hayes v. Willio*, 11 Abb. Pr. (N. S.) 167; *Daly v. Smith*, 49 How. Pr. 150; *Hursen v. Gavin*, 162 Ill. 377, 44 N. E. 735; *Eisel v. Hayes*, 141 Ind. 41, 40 N. E. 119; *Angier v. Webber*, 14 Allen 211; *Up River Ice Co. v. Denler*, 114 Mich. 296, 72 N. W. 157, 68 Am. St. 480; *Carll v. Snyder* (N. J.), 26 Atl. 977; *Genelin v. Reisel*, 10 N. J. L. J. 208; *Stofflet v. Stofflet*, 160 Pa. St. 529, 28 Atl. 857; *Eckart v. Gerlach*, 12 Phila. 530; *Carroll v. Hickes*, 10 Phila. 308.

These authorities run upon the theory that one who has sold a business, agreeing to remain out of a like line for a definite time, cannot destroy the good will with which he has agreed that he will not interfere. It is clear to us that, although respondent cannot be enjoined from giving piano lessons in the city of Seattle, it appearing that he is not possessed of unusual skill or craft in his profession, or that his name is of particular benefit to the appellant, and his place being supplied by another, yet he has nevertheless so conducted himself as to warrant the exercise of the restraining influence of a court of equity. He can seek his livelihood by following his profession or business, and no court will interfere; but under the terms of his contract, he has engaged to promote the good will of appellant's business for a definite time, and he cannot solicit those known to be the clients of appellant or, for the mere sake of advancing his own interest, charge dishonorable or disreputable methods to appellant. He can build up his own business by legitimate methods, but he cannot destroy the business of his former employer by

methods that do not appeal to that sense of fairness common among men.

The motion for nonsuit, in so far as it goes to the point under discussion, was based upon the ground that it had not been shown that any pupils had left the appellant's school on account of respondent's leaving its employ. We grant that the record fails to disclose this fact. But it does disclose an ill will, as well as an endeavor to influence the minds of certain of the pupils against appellant and its officers. And respondent should not be allowed to claim that immunity which equity gives to those who walk within its precepts, because his effort and his influence failed of results. His continued effort may succeed. To prevent wrong is the peculiar province of equity. His conduct has been such, and promises to be of such character, that damages may result. If so, they would be irreparable, in the sense that they could be estimated only by conjecture and not by any accurate standard. *Commonwealth v. Pittsburgh etc. R. Co.*, 24 Pa. 159, 62 Am. Dec. 372.

A review of the authorities relied on would be engaging to the writer and of possible interest to the profession, but would unnecessarily extend the limits of this opinion. For it is our judgment that appellant's rights depend, not so much on the simple breach of the positive covenants of its contract, as upon the general equitable doctrine that a person who has engaged to support the good will of a business will not be permitted to destroy it by unfair methods. To the observance of this duty respondent bound himself for the whole term, and while he may relieve himself of his negative covenant, he is still bound to maintain, to the extent of inaction at least, the good will of the appellant's business. That injunctions will issue within the facts of the particular case, as for instance if there be unusual talent, knowledge of trade secrets, business methods, and express covenants to maintain the good will of a business, or the good faith of a transaction, finds abundant support in the authorities.

Our conclusion is that appellant has made out a case, and

unless upon a retrial respondent makes a showing that will exonerate him, an injunction should issue restraining him from invading the good will of appellant's business and from soliciting its clients and patrons.

Reversed, and remanded for further proceedings.

DUNBAR, C. J., MORRIS, ELLIS, and CROW, JJ., concur.