### MILLER v. CHICAGO PORTRAIT CO.
#### (No. 5909.)

(Court of Civil Appeals of Texas. San Antonio. May 9, 1917. Rehearing Denied June 6, 1917.)

1. DAMAGES ⊜⇒78(3)—CONTRACTS—LIQUIDATED DAMAGES.

Where a contract not to engage in a rival business in a certain locality provides for the payment of a stipulated sum on a breach, the amount is regarded as stipulated damages and not as a penalty.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 160.]

2. INJUNCTION ⊜⇒61(2) — RESTRAINING BREACH OF CONTRACT—STIPULATION OF PARTIES—INTENTION OF PARTIES.

Whether a contract stipulating that, in case of any violation, the party so violating it acknowledges his indebtedness to the other in a specified sum, limits the remedy of the party injured to an action at law, or whether he is entitled to injunctive relief, depends on the intention of the parties deducible from the contract and the surrounding circumstances.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 121–123.]

3. INJUNCTION ⊜⇒61(2) — RESTRAINING BREACH OF CONTRACT—ENGAGING IN COMPETING BUSINESS.

Under a contract wherein an employé agreed with employer that he would not, for one year, for any other firm solicit or for enlarging photographs, selling frames, etc., it was clear that the $1,000 liquidated damages provided for was to give all the relief that could be obtained, and a count of equity would not enjoin employé from engaging in such business within the state; there being no evidence of trade secrets connected with the business or that damages were inadequate, and courts not favoring contracts which would drive employé out of state to seek occupation in a business with which he is better acquainted than any other, or put him in another business for which he is not suited.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 121–123.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by the Chicago Portrait Company against C. I. Miller. From a decree for plaintiff, defendant appeals. Reversed and remanded.

J. F. Carl, P. H. Swearingen, Jr., and Geo. G. Clifton, all of San Antonio, for appellant. John T. Evans, of Chicago, Ill., and Norton & Brown, of San Antonio, for appellee.

FLY, C. J. This is a suit by appellee to restrain appellant from engaging in the same business in which appellee is engaged or in a competing business in the state of Texas for a period of one year from January 16, 1917. The business of appellee is that of enlarging photographs into portraits finished in oil, crayon, and pastel, and in selling frames and other merchandise in connection with said business. It was alleged that appellee, on or about January 1, 1916, entered into a contract with appellant whereby the latter agreed to perform certain stipulated duties, and continued to perform such duties until January 16, 1917, and engaged in the same business in competition with appellee in violation of his agreement as follows:

"Second party agrees, as a special consideration for the obligation assumed by first party herein and the commissions to be paid to him under this agreement, that he will not for a period of one year from the date of the termination of his employment hereunder, without the written consent of first party so to do, (a) engage in the same business as that conducted by him for first party or engage in any competing business in the territory or any parts thereof in which second party was employed for the year last preceding the termination of his employment hereunder; (b) employ directly or indirectly, or aid, assist, encourage, advise or direct any other person, firm or corporation in employing in any territory or business for said period of one year immediately succeeding the termination of his employment hereunder any person or persons at any time employed by first party, unless such party shall have been out of the employ of the first party for six months; (c) knowingly, intentionally or willfully aid, assist,

encourage, advise or direct, directly or indirectly, any person or persons who may be employed by first party for the year next succeeding the termination of the second party's employment hereunder, to quit or abandon such employment by the company during said period, for the purpose of entering into any other business or employment whatever."

The court, upon a hearing, granted a temporary writ of injunction as prayed for.

It was agreed that the contract was duly executed by the parties, and that it had been breached by appellant as to the stipulations in the paragraph hereinbefore copied, and that he is insolvent.

The only questions to be solved in this case are as to whether a contract not to enter into the same business for a year as that in which appellant was engaged is valid and binding, and, if so, if the provision for liquidated damages for a breach does not take the case out of the jurisdiction of a court of equity, and thus prevent the issuance of a writ of injunction.

[1] The authorities seem to establish beyond question that where a contract is made not to engage in a rival business in a certain locality and provision is made for the payment of a stipulated sum on a breach, such amount is treated as stipulated damages, rather than as a penalty. However, the weight of authority seems to be that, although liquidated damages are provided for in such contracts, such provision does not oust equity jurisdiction unless it appears from the contract that it was the intention of the parties thereto that the damages should be the only remedy, and that no equitable remedy was contemplated. Wilkinson v. Colley, 164 Pa. 35, 30 Atl. 286, 26 L. R. A. 114; Harris v. Theus, 149 Ala. 133, 43 South. 131, 10 L. R. A. (N. S.) 204, 123 Am. St. Rep. 17; Ropes v. Upton, 125 Mass. 258; Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. St. Rep. 464; McCurry v. Gibson, 108 Ala. 451, 18 South. 806, 54 Am. St. Rep. 177; Heinz v. Roberts, 135 Iowa, 748, 110 N. W. 1035.

[2] But as said by the New York Court of Appeals in the cited case of Diamond Match Co. v. Roeber:

"It is, of course, competent for parties to a covenant to agree that a fixed sum shall be paid in case of a breach by the party in default, and that this should be the exclusive remedy. * * * It is a question of intention, to be deduced from the whole instrument and the circumstances; and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced."

In the case of Wills v. Forester, 140 Mo. App. 321, 124 S. W. 1090, in which the question under consideration is fully discussed, the court said:

"The fact that the damages are liquidated does not of itself change the rule. It is a question of the real intention of the parties to be deduced from the whole instrument and the surrounding circumstances, and if it appear from these that the performance of the contract was intended, and not merely the payment of damages in case of its breach, the agreement will then be enforced by specific performance."

[3] The contract herein provides:

"The parties hereto having considered the damages which might or will accrue to the first party by reason of the violation of any of the provisions of this section by second party, and the difficulty or practical impossibility of arriving by computation or legal proof at the exact amount of such damage, to first party, and having considered what would be a fair and reasonable amount of such damages for violation by second party of the provisions a, b or c, of this section, as hereinbefore set out, shall be fixed at the sum of one thousand ($1,000.00), as liquidated damages, which the said second party and his sureties agree to pay for such violation of any or all of said provisions on demand, and the first party shall have the right to set off said amount against any amounts due or to become due from first party to second party or stock owned by second party in the company, and any bond given to secure this contract shall include the stipulated damages under this section."

It is clear that it was the intention of the parties that the $1,000 was to give all the relief that could be obtained from a breach of the contract, and that it was never contemplated that a court of equity should interpose with a writ of injunction. It appears that the liquidated damages were deemed sufficient to meet every breach of the contract, and we would judge from the evidence which fails to show any damages whatever, that full compensation can be obtained from the $1,000 for any possible breach of the contract. No actual damages were claimed or proven. There was no evidence of trade secrets connected with inducing people to have their photographs magnified into portraits and placed in expensive frames. Any good canvasser could do all that was necessary to gain the desired end.

As said in the case of Gossard v. Crosby, 132 Iowa, 155, 109 N. W. 483, 6 L. R. A. (N. S.) 1115:

"Even where there is an express negative covenant, the authorities all agree that an injunction will not be granted save in those exceptional cases where the promised service is of a special, unique, unusual and extraordinary, or intellectual character which gives it peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law."

In the case of Osius v. Hinchman, 150 Mich. 603, 114 N. W. 402, 16 L. R. A. (N. S.) 393, it was held in a similar case to this:

"Complainant, having failed to show that he has in reality suffered any loss, or will suffer any loss by reason of the acts of defendant, or that he is in any way actually prejudiced by such acts, or that the enforcement of the agreement was necessary to his protection, is not entitled to relief."

In the case of Simms v. Burnette, 55 Fla. 702, 46 South. 90, 16 L. R. A. (N. S.) 389, 127 Am. St. Rep. 201, 15 Ann. Cas. 690, as in this, there was no proof of any trade secrets or any high intellectual attainments necessary to sell portraits, and it was held that no injunction should be granted. See, also, Columbia College v. Tunberg, 64 Wash. 19, 116 Pac. 280, and Kinney v. Scarbrough Co.,

138 Ga. 77, 74 S. E. 772, 40 L. R. A. (N. S.) 473.

Courts will not favor contracts that would drive a man out of Texas to seek occupation in a business, with which he is perhaps better acquainted than any other, or put him in another business for which he is not trained or suited. This is a different case from the sale of a business induced by a contract not to engage in a similar business in a named locality in a specified time. The contract in this case is aimed at the right to obtain employment in a similar business. It is an attempt to restrain the right to earn a living. As said in an Ontario case, Allen Mfg. Co. v. Murphy, 23 Ont. L. Rep. 467, cited in note to Kinney v. Scarbrough Co. (Ga.) 40 L. R. A. (N. S.) 473:

"Restraints which may fairly be regarded as entirely reasonable when imposed in connection with the sale of a business or good will, or with the transfer of patent rights or of a trade secret, or with the dissolution of a partnership, should not be accepted in all cases as necessarily or even approximately applicable to restraints imposed upon employés to whom the only consideration for their covenant is employment and receipt of wages or remuneration for a more or less certain number of years."

The judgment is reversed, and the cause remanded.