## THE W. J. JOHNSTON COMPANY (Limited), Appellant, *v.* WALTER T. HUNT and Another, Respondents.

*Equity — an injunction to restrain a former employee of the plaintiff from rendering services to another.*

Walter T. Hunt, who had been connected with a newspaper for a long time, and had become familiar with its methods, and particularly with those which related to advertising, of which department he had had charge, knowing the patrons of the newspaper, and the manner in which their advertising could be obtained, after having agreed to give the journal his whole time, without cause left its employment and attached himself to a rival newpaper in the same capacity and solicited advertising for it.

In an action brought by the first-named newspaper to restrain Hunt from giving his services to its rival, it appeared that such action on the part of Hunt had been hurtful to the plaintiff, but there was no evidence that it had caused any irreparable loss to it.

Upon an appeal by the plaintiff from a judgment dismissing the complaint

*Held*, that, whether the services rendered were so unique and extraordinary that an injunction would be granted to restrain the person from serving another, might be answered by determining whether the services could be rendered by a substitute.

That, as in this case, a substitute had rendered the same services, although at some loss, it was not a proper case for an injunction.

That there was no absolute rule of law that where damages were shown, but no right to an injunction was made out, the court must retain the case for legal relief in damages.

That, whether or not the court should so retain it, rested in its discretion.

That the court could properly retain an action of this nature in order to afford legal relief where, at its commencement, the facts warranted legal, and also equitable relief, although, by reason of a change in facts or circumstances subsequent to the commencement of the action, such equitable relief was no longer necessary, or upon the facts proved upon the trial, could not be granted.

That where the suit was brought in equity and it appears that at the commencement thereof the plaintiff was not entitled to any equitable relief, the court, upon dismissing the equitable claim, might require the plaintiff to proceed by an action at law for the legal remedy he was entitled to. (Barrett, J., dissenting.)

Appeal by the plaintiff, the W. J. Johnston Company (Limited), from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 12th day of May, 1892, dismissing the complaint, with costs, after a trial by the court at the New York Circuit.

*Thomas J. Keigham*, for the appellant.

*Thomas Henby Hull*, for the respondents.

O'BRIEN, J.:

This action was brought to obtain an injunction restraining the defendant Hunt from working for the defendant, the Electric Age Publishing Company, in the capacity of an advertising solictor or agent, and for damages, on the ground that Hunt had agreed " to devote his entire time and attention to the interests " of the Johnston Company " in the capacity of advertising solictor, and to do similar work for five years from the 1st day of June, 1890." Upon the trial the written agreement between the parties was produced. By its terms, in addition to the provision above quoted, it further provided that the defendant Hunt, while in the employment of the plaintiff, would not " devote any of his time or attention, during business hours or otherwise, in the interests or to the advantage of any other corporation, company, person or firm, electrical or otherwise, without the written consent" of the plaintiff. This agreement, as shown by the testimony, was wantonly and without any just cause or excuse broken by the defendant Hunt. Being dissatisfied with a former agreement entered into between them, he induced the plaintiff to cancel the same, and further induced him to pay $4,000 in cash, and thereupon executed the agreement which it is now sought to enforce against him.

Upon such a state of facts, and, concededly, out of no consideration for the defendant Hunt, whose bad faith was made apparent, the learned trial judge dismissed plaintiff's complaint, upon the ground that the contract was of such a nature as not to entitle plaintiff to an injunction restraining the defendant Hunt from giving his services to the other defendant, who, it appears, carries on a paper similar to that conducted by the plaintiff and in competition with it.

The question thus presented, as stated in *Daly* v. *Smith* (38 Sup. Ct., 158 ; 49 How. Pr., 150), is whether or not a court of equity will interfere by injunction to prevent a breach of a contract for personal services, or whether the complainant must look to his damages at

law as his sole redress.  This case (*Daly* v. *Smith*), as well as all the cases germane to the subject, observe the distinction which is to be noted between affirmative and negative covenants in such an agreement, and while the court does not possess the power to compel a person to render services which he has agreed to perform, yet when he has stipulated not to work for another, the court can and will, in a proper case, prevent his doing so.  It is not, however, in all cases where contracts are made for personal services that a court of equity will intervene, but only in cases where, as stated in Pomeroy's Equity Jurisprudence (vol. 3, § 1343), " a contract stipulates for special, unique or extraordinary services or acts, or for such services or acts to be rendered or done by a party having special, unique and extraordinary qualifications, as, for example, by an eminent actor, singer, artist and the like."

As said by Mr. Justice BARRETT, in *Strobridge Lithographic Company* v. *Crane* (35 N. Y. St. Rep., 473): "It may sometimes be difficult to say just what is a special, unique and extraordinary service, or whether the employee possesses special, unique or extraordinary qualifications.  The solution may generally be reached by an inquiry as to whether a substitute for the employee can readily be obtained, and whether such substitute will substantially answer the purpose of the contract; in other words, whether the individual service specially contracted for is essential to prevent irreparable injury.  The foundation of the jurisdiction is the inability of the law to afford adequate redress."

By the evidence in this case it was shown that the plaintiff, immediately after the defendant had broken his contract, substituted in his place another ; and, while there is some slight evidence to show that the effect of the withdrawal of the defendant Hunt and the substitution of another resulted, for the time being, in some loss of advertising to the plaintiff's paper, yet it failed to establish what is required in cases of this kind, viz., that the injury was irreparable, not capable of being ascertained and redressed by a suitable action at law, and that Hunt possessed " special, unique or extraordinary qualifications " as an advertising agent or solicitor.  There can be no doubt that his services were valuable, because this is evidenced by the character of the agreements, the efforts put forth by plaintiff to retain his services, and the consideration provided in the agree-

ment for his compensation. Regarding, however, the character of the work which he was to perform, and the other considerations adverted to, we do not think that there is presented a case which should demand the equitable interposition of the court.

The appellant, however, urges, and with much force, that though the court concluded upon the evidence that the plaintiff was not entitled to equitable relief, still, having the action for one purpose, and it being shown that damages resulted by reason of defendant's breach of the agreement, the court should have proceeded and ascertained the same, or sent the case to a referee or jury for that purpose.

This question has been many times presented, and we do not pretend to reconcile the cases; and while there is seeming authority for the position taken by appellant, that it was within the power of the court, in an action in which both equitable and legal relief were sought upon the same state of facts, to retain the action and dispose of the question of legal relief as though the action had originally been brought only for such relief, yet we find no case which goes to the extent of holding that the court, upon reaching the conclusion that no equitable relief should be accorded, must retain the action for such legal relief.

In determining the question as to when the discretion vested in the court should be exercised, we think it is properly employed by retaining the case for the purpose of affording legal relief in cases where, at the time of the commencement thereof, the facts warranted legal relief and would have justified a decree in equity, and where, by reason of a change in facts or circumstances, subsequent to the commencement of the action, such equitable relief is no longer necessary, or, upon the facts proved upon the trial, could not be granted. In such cases, the plaintiff, having properly brought his suit in equity, should not, by reason of subsequent events, be denied relief; it being a proper exercise of the discretion vested in the court to retain the action for the purpose of disposing of the question of legal relief in the manner provided for the trial of legal actions, thus saving the delay, labor and expense incident to the commencement of another action at law. On the other hand, where a suit is brought in equity, and the evidence discloses the fact that at the commencement thereof the plaintiff was not entitled to any equitable relief, then the court,

upon dismissing the equitable claim, can require that the plaintiff, for any other relief to which he may be entitled, must proceed in the ordinary way by an action at law.

Having concluded that the plaintiff was not entitled to the injunction prayed for, and that, as to this part of the relief, the complaint should be dismissed, the trial judge was not then obliged, even though a motion was made by the plaintiff to that effect, to send the case to the circuit for trial, but could, as he did, dismiss the complaint without prejudice to an action at law.

We are of opinion that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., concurred.

BARRETT, J.:

I dissent upon several grounds. First, the learned judge at Special Term should not have dismissed the complaint upon the ground that jurisdiction in equity was not shown when no such point was taken by counsel. The defendant moved to dismiss upon other grounds, and the learned judge, without passing upon these grounds, dismissed the complaint, generally assigning as a reason that the remedy was at law. Second, the defendant did not insist in his answer, or suggest upon the trial, that an adequate remedy at law existed. On the contrary, he treated the action throughout as properly an equitable one, and even demanded, in his answer, equitable relief as against the plaintiff. Third, upon the case made by the pleadings and proofs, the contract was for the performance of personal services requiring special aptitude, skill and experience, for the breach of which an action at law would not have afforded the plaintiff an adequate remedy. The plaintiff's revenue comes almost entirely from advertising. Hunt was an advertising solicitor, and he controlled this advertising to a large extent personally. This was because a large proportion of such advertising was obtained through his personal solicitation. He had been in the employ of Mr. Johnston, or of the plaintiff, for several years, and he grew up, so to speak, with the journals which they published. The business was built up with Mr. Johnston's, or the plaintiff's money, which was expended for Hunt's salary, and for his traveling expenses when engaged in the business of soliciting advertisements. When Hunt

notified Johnston that he was about to leave, he said that it was principally owing to his services that the business was what it was, and that, at least, a portion of the business ought to belong to him. He, at least, must, then, have felt that his services were "special, unique and extraordinary," for he shamelessly demanded $10,000, and declared that if it were not paid he would break his contract, connect himself with another journal, and take away half of the plaintiff's advertising business. In his answer, Hunt did not deny the allegation of the complaint that : "By reason of his long connection with the plaintiff's said newspaper, he had become thoroughly familiar and well acquainted with the method of carrying on the plaintiff's business, and especially with the methods of carrying on its advertising business, and the methods of soliciting or securing such advertisements, and with the customers or patrons of the said plaintiff."

Nor did he deny that the knowledge which he possesses on the subject of this special advertising was acquired while in the employ of Mr. Johnston, or the plaintiff.

In the same way, he admits that his large and extensive acquaintance with advertisers was formed by means of money furnished to him by Johnston or the plaintiff to enable him to secure, for their benefit, a business standing with persons, firms and corporations who needed to use the journal in question as an advertising medium.

His conduct in securing an advance of $4,000 in cash, as an inducement to execute the new agreement under consideration, and in subsequently demanding $10,000 more as an inducement to be honest in fulfilling it, is properly characterized by Mr. Justice O'BRIEN. That, at least, was certainly unique and extraordinary conduct. And it was based upon the undoubted fact that his services were essential to the plaintiff, and that no substitute could readily be obtained.

I think the facts of this case bring it fully within the principle enunciated in *Strobridge Lithographic Company* v. *Crane* (35 N. Y. St. Rep., 473), which Mr. Justice O'BRIEN quotes, and the authorities there referred to; and that the judgment should be reversed and a new trial ordered.

Judgment affirmed, with costs.