One of them (366) made it unlawful to use any building as a garage without a permit from the Fire Commissioner. Another (368) provided that such a permit might be issued by the Fire Commissioner upon a written application, and with the approval of the Municipal Explosives Commission.

Among the restrictive provisions contained in another regulation or ordinance (370) is one which forbids the issuance of such a permit for any building, shed, or inclosure "which is situated within fifty feet of a building occupied as a school, theater or other place of public amusement or assembly."

If this ordinance is valid, it affords complete justification for the refusal of the defendants to issue a permit. The relator's contention is that the ordinance or regulation, in so far as it forbids the issue of a license to a garage within 50 feet of a school, is unreasonable and therefore void. We do not so consider it. The affidavits read in behalf of the defendants, which for the purpose of this motion must be accepted as true, show very clearly the constant danger that there is that a fire may break forth in a garage, and that, from the nature of the materials stored therein, the results of such a fire are likely to be very disastrous if a place of assemblage be near by where many persons are congregated, and especially if the place of assemblage be a school filled with young children. The danger perhaps will result rather from panic than from the fire itself, but in either case it is a danger to be guarded against. It appears that there have already been three fires in the very building for which a permit is now asked, but fortunately they all occurred when the school was not in session. The regulation or ordinance is well within the power given by the Legislature and is well adapted to carry into effect the purpose of the legislation. We do not think, and therefore cannot say, that it is oppressive or unreasonable.

The order must therefore be affirmed, with $10 costs and disbursements. All concur.

---

MAHLER et al. v. MAHLER et al.

(Supreme Court, Appellate Division, First Department. February 6, 1914.)

1. INJUNCTION (§ 63*)—SUBJECTS OF PROTECTION—CONTRACTS.

Defendant, an importer of candy, having contract rights with four European firms, sold out his business and transferred such contract rights to his wife, who thereafter formed a corporation to continue such business to which she transferred such contract rights. The new corporation and defendant entered into a contract whereby defendant was to go to Europe and secure contract rights for the new corporation, and, upon his return, to enter its employment as salesman; the contract expressly providing that he should not thereafter either directly or indirectly compete in such importing business with the corporation. Defendant, after terminating such employment, formed a new corporation to engage in such business, but defendant was neither a stockholder nor officer, but was only general manager of such corporation. *Held,* that such corporation could not be enjoined from competing by virtue of the contract, since it was not

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a party thereto, though it knew at the time of employing defendant that he was breaking his contract with plaintiff.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 63.*]

2. INJUNCTION (§ 61*)—SUBJECTS OF PROTECTION—CONTRACTS.

Defendant, an importer of candy, after having sold his business and contract rights with four European concerns, subsequent thereto contracted with the buyer, for the small consideration of $250, to make a trip to Europe for the buyer, and for the same consideration to never thereafter compete in the same business. *Held*, that an injunction restraining defendant, because of so small a consideration, from thereafter engaging in the same business, was unwarranted.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 120–123; Dec. Dig. § 61.*]

Appeal from Special Term, New York County.

·Action by Emily Mahler and another against Hans Mahler and Maldurmin Importing Company. Judgment for plaintiffs, and defendants appeal. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Charles A. Riegelman, of New York City, for Hans Mahler.

Fulton McMahon, of New York City, for Maldurmin Importing Co.

McLAUGHLIN, J. The appellant Hans Mahler was at one time engaged in importing candy, bonbons, etc., from four European manufacturers. Prior to 1909 he sold the business, together with his contract rights with the foreign manufacturers, to his wife, Emily Mahler, and authorized her to continue it in his name. She thereafter formed a corporation, the Hans Mahler Company, of which she owned all the capital stock, and to which she assigned and transferred the business. On the 24th of May, 1909, Mahler, his wife, and the corporation entered into a written contract which gives rise to the subject-matter of this action, by the terms of which Mahler agreed he would go to Europe and obtain, if he could, from the four manufacturers referred to, their consent to his assigning to the corporation his contracts with them; or, if he could not do that, he would obtain new contracts for the Hans Mahler Company. He also agreed that he would not obtain new contracts for himself or any other concern, and if he were unable to procure new contracts from the manufacturers for the Hans Mahler Company, or such concerns would not consent to his transferring his contracts to it, then he would permit the company to carry out the contracts which he had theretofore obtained in his name. There was a further provision in the contract to the effect that he would not "engage, either directly or indirectly, in any business within the United States of America which, in any manner has the representation of or is the agency for any or all of the aforesaid firms." Mrs. Mahler agreed to pay him $250 for his services and also a certain percentage of the selling price of any of the stock of the corporation which she might dispose of, and the Mahler Company agreed that upon Mahler's return from Europe it would employ him, for a period to be thereafter agreed upon, as salesman at a specified salary, and also give him commissions

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on goods sold by him. The $250 was paid, and in accordance with the contract Mahler went to Europe and returned some time in July, 1909. It does not appear just what he did there, except that he procured one contract. It was not shown whether this contract was procured in the name of the corporation or for its benefit, except that fact might possibly be inferred from the testimony of Mrs. Mahler.

Considerable testimony was offered to the effect that Mahler, at different times, stated to his wife and others that while in Europe he arranged with four manufacturers to make contracts with him personally, or with a company or corporation to be formed by him, whenever he saw fit to request that to be done. Upon his return he entered the employ of the Hans Mahler Company and continued in it until January, 1910, when his employment was terminated—whether by the corporation or himself does not appear. After the termination of the employment, he commenced negotiations with other persons for the formation of a corporation to engage in the importing business, including the importation of candy from at least one of the four manufacturers referred to. The result of these negotiations was that on March 14, 1910, the defendant Maldurmin Importing Company was incorporated; but, so far as appears from the record, Mahler was not an officer, nor did he hold any of its stock—his sole connection with it being that of manager. This corporation immediately after its formation commenced to import candy, bonbons, etc., from the four manufacturers, who thereafter, according to plaintiffs' testimony, refused to sell to the Hans Mahler Company.

This action was brought to perpetually enjoin both Mahler and the Maldurmin Importing Company from purchasing or importing merchandise of the four manufacturers, or representing them in the United States. It does not appear that the Maldurmin Company or Mahler now handles the merchandise or represents but one of the manufacturers. The trial court, however, granted the relief asked for and perpetually enjoined both Mahler and the Maldurmin Company from engaging, either directly or indirectly; "in any business within the United States of America which, in any manner has the representation of or is the agency for any or all of the aforesaid firms"; from ordering or receiving any candy from them; and from selling any candy made by them. From the judgment the defendants separately appeal.

[1] First. The judgment as to the Maldurmin Importing Company is clearly erroneous because it was not a party to the contract sued on and there is no basis whatever for enjoining it. It never agreed not to sell the merchandise or represent, in the United States, the foreign manufacturers. It therefore had a perfect right to enter into competition with the plaintiffs by purchasing from such manufacturers if it so desired. So far as appears, the Hans Mahler Company did not have an exclusive contract with the foreign companies to represent them in the United States, nor did it have any contract with a definite time to run. Under such circumstances, it is plain that the Maldurmin Importing Company was entitled to enter into any agreement with the manufacturers to become their sole distributors in the United States, and, if that resulted in injuring the plaintiffs' business, it was their misfortune,

but for which they had no legal claim. It is possible, if Mahler had owned all of the stock of the Maldurmin Importing Company, or had control of it and was using the corporation merely to conceal his own identity, that another question would be presented. If he were bound by a contract not to enter into competition with the plaintiffs, then a court of equity would not permit him to hide his efforts under the name of a corporation. People v. North River Sugar Refining Co., 121 N. Y. 582, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843; Anthony v. American Glucose Co., 146 N. Y. 407, 41 N. E. 23; In re Rieger, Kapner & Altmark (D. C.) 157 Fed. 609. But he owned none of the stock of the Maldurmin Company. He was not even an officer of it and had no interest in its affairs other than that of an employé. It is true the court below found, as a fact, that the Maldurmin Company employed Mahler and took advantage of his services in procuring the contracts with the foreign manufacturers with knowledge that he was breaking his agreement with the plaintiffs. The finding does not seem to be sustained by the evidence, but assuming that it is, under the other facts proved this did not entitle the Mahler Company to the redress given. Ashley v. Dixon, 48 N. Y. 430, 8 Am. Rep. 559; Roseneau v. Empire Circuit Co., 131 App. Div. 429, 115 N. Y. Supp. 511.

[2] Second. I am also of the opinion that the judgment enjoining Mahler should be reversed. A party is never entitled to an injunction as a matter of right. Whether a court of equity will exercise its powers in granting such relief always depends upon the facts peculiar to each case. It will never be granted unless the court, in the exercise of a sound discretion, can see that such relief is necessary in order to prevent irreparable injury. The facts proved did not bring this case within that rule. Mahler's promise not to engage in the business of importing or selling the merchandise of the foreign manufacturers was not made when he sold his business to his wife, nor when she sold her business to the corporation. Up to this time he was at liberty to get such contracts as he saw fit from the foreign manufacturers and to transact any and all business in connection therewith. It was not until he entered into the contract with the plaintiffs that he agreed not to obtain contracts for himself or to enter into competition with them. This contract was made with reference to his contemplated trip to Europe. Plaintiffs sought to get the exclusive benefit, by this trip, of his relations with the foreign manufacturers and contracts which he had theretofore obtained from them. This was the consideration given for his agreement and in my opinion had reference to this one trip and nothing else. He was paid $250 by Mrs. Mahler, a considerable portion of which was used in purchasing his steamship passage. She also agreed to pay him a certain percentage of the price received for stock in the corporation sold by her. But she did not agree to dispose of any stock, and in fact has not done so. It is true the Mahler Company agreed upon his return to give him employment at a certain compensation, but this agreement was not for any definite time, and in fact he only remained in its employ a few months. In view of the small consideration received by him, it would be both unreasonable and unjust to hold that he should, during his life, be perpetually enjoined from

doing any business with said firms or their representatives within the United States.

It follows the judgment appealed from should be reversed, and the complaint dismissed, with costs. All concur.

