(164 App. Div. 366)

M. WITMARK & SONS v. PETERS et al.  (No. 6255.)

(Supreme Court, Appellate Division, First Department.  November 6, 1914.)

INJUNCTION (§ 57*)—ENJOINING BREACH OF CONTRACT—INEQUITABLE CONTRACT.

    By a contract between a composer of music and a publisher, the composer agreed to deliver to the publisher all music composed by him during a period of five years, and that the title to all such music should immediately vest in the publisher, and that he would not write or compose any musical composition for any other person during that period, and that he would submit to the publisher not less than six compositions in each year. The publisher agreed to publish not less than three compositions acquired from the composer during each year of the term, though he was not bound to publish them in the year that they were submitted, and to pay certain royalties on copies sold by him. *Held*, that the contract was so inequitable that equity would not enforce its provisions by injunctive or mandatory relief, either as to the affirmative or negative covenants, since, assuming that the agreement to publish carried with it an agreement to offer the copies so published for sale, the publisher could comply with the agreement by publishing a few copies of the three compositions selected in each year, and thereby, by paying an entirely inadequate royalty, control the composer's entire productive capacity for five years, and hence the publisher would be left to his remedy at law for a breach of the agreement.

    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 111–113, 130; Dec. Dig. § 57.*]

Appeal from Special Term, New York County.

Action by M. Witmark & Sons against William F. Peters and another. From an interlocutory judgment in favor of plaintiff, entered on a decision after a trial at Special Term, defendants appeal. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Max D. Josephson, of New York City, for appellants.
Nathan Burkan, of New York City, for respondent.

DOWLING, J.   Plaintiff, a publisher of music, entered into a written agreement with the defendant Peters, who was a composer, on or about December 8, 1911, under the terms of which Peters was to deliver to the plaintiff for publication during a period of five years all the music which he alone or in conjunction with others should either write or compose or acquire control of, and by which the composer agreed that all musical compositions which he might write or compose during said period, including the titles, words, and music thereof, should, immediately upon the same being written or composed, or control thereof secured, become and be the absolute property of the plaintiff, and Peters granted and conveyed to plaintiff the copyright or copyrights thereof, with all renewals.   Peters also agreed not to write for, compose, or deliver to any person other than the plaintiff any musical composition at any time during the period of five years, or the titles, words, or music of any such composition, or any part thereof, and that he would not permit any publisher, person, firm, or corporation other than the plaintiff to use the same. Peters further agreed under his contract to submit all the new or original compositions written and composed by him alone, or in conjunction with others, or controlled by him, to the extent of not less than six compositions in each year, and plaintiff agreed to publish not less than three compositions acquired from Peters during each year of the term of the agreement.   Complete works, such as comic operas, musical comedies, or groups of numbers or cycles, were to be considered as single compositions.   In return for all this plaintiff agreed to pay to the party of the second part, upon each and every copy sold by it of any operatic, standard, or high-class composition which the party of the second part shall have written, composed, or acquired control of, four cents when he furnished both words and music, and two cents when he furnished either the words or music only; also certain other sums upon the various other kinds of compositions supplied by Peters under his contract.   It was also agreed that, should plaintiff sell any of the so-called "popular" compositions at less than regular rates, the party of the second part should accept as royalty 1½ cents per copy if he supplied both words and music, and ¾ of a cent per copy if he supplied either the words or music only, upon all copies sold at a reduced rate down to 10 cents.   Upon all copies sold at less than 10 cents he was to accept a still further reduction in his royalties.   Peters by the agreement also transferred to plaintiff all mechanical rights in any composition theretofore written or composed by him, either alone or jointly with others, or in which he had, either alone or with others, acquired such rights, as well as on all of his future compositions during the life of the agreement.   Plaintiff was to collect the royalties under such rights and deliver one-half thereof to Peters.   Semiannual statements were to be rendered and payments made for any balances due within 30 days thereafter.

During the first year of the life of this agreement, Peters submitted three compositions to plaintiff, none of which it published.   During

the second year five additional numbers were delivered by Peters, all of which were published by plaintiff during that year, the last on June 9, 1913. On June 5, 1913, Peters made a contract with the other defendant herein, Harms & Francis, Day & Hunter, a corporation, having knowledge of the agreement between plaintiff and Peters. Peters thereafter delivered to his codefendant the music of the musical comedy "Iole," three numbers of which were thereafter published by the defendant company. Plaintiff seeks to enforce specific performance of the affirmative covenant contained in the contract between it and Peters, by compelling the defendants to assign to it the music of the comedy "Iole," and also to enforce the negative covenant of said agreement by which Peters was not to compose or deliver to any person other than plaintiff any musical composition during the life of his agreement with plaintiff. From the judgment granting the relief demanded, these defendants appeal.

There is no substantial dispute as to the facts. The question for determination is whether the contract between the plaintiff and Peters was one which will be enforced in a court of equity. The contract contains no express provision by which the plaintiff binds itself to sell any of the compositions published by it and composed by Peters, nor does it undertake to issue any fixed or definite minimum number of copies thereof. But, even if the agreement to publish carries with it by inference an agreement to offer the copies so published for sale, then the contract seems to be so inequitable that a court of equity would not be justified in enforcing its provisions by injunctive or mandatory relief, either as to the affirmative or negative covenants thereof. Peters for a period of five years is required to turn over every musical composition which he either originates or controls, no matter what the aggregate number may be, and they at once become the absolute property of the plaintiff, which, while agreeing to publish any three which it may select in each year, does not bind itself to publish them in the year that they are submitted, but may do so at any time during the life of the agreement, as it may see fit. It could literally comply with the terms of the agreement by publishing five or ten copies of each of the three compositions which it finally selected in each year, and thus make itself absolute master of the entire productive capacity of Peters for five years, preventing him from finding a market for his efforts elsewhere, and at the same time paying him a royalty ridiculously small and entirely inadequate for the services which he was required to perform for them. Where a contract is as inequitable as the one now under examination, and where the benefits accruing to the plaintiff are so palpably disproportioned to the services required to be performed by Peters, a court of equity will not interfere to enforce such an inequitable and improvident agreement, but will relegate the plaintiff to its cause of action at law, particularly where, as in this case, there is no allegation whatever that the defendants are financially irresponsible or unable to respond to the plaintiff for such damages as it may establish in an action at law.

The judgment appealed from will therefore be reversed, and the complaint dismissed, with costs to the appellants. All concur.