HARRY GILBERT and MAX GILBERT, Doing Business under the Assumed Name of THE NATIONAL HOUSE AND WINDOW CLEANING COMPANY, Plaintiffs, v. MAX WILMER, Defendant.

(Supreme Court, Onondaga Special Term, February, 1918.)

Contracts — in writing — what not a violation of — services — injunctions.

Where, by a contract in writing under which defendant was to work as a window cleaner for plaintiffs, he agreed that for one year after he left their employment he would not go into the window cleaning business directly or indirectly for himself in a certain locality, and the only promise made by plaintiffs was to pay defendant a stipulated sum a week for his services, the soliciting by defendant for his own personal employment of orders for window cleaning from former customers of plaintiffs is not a violation of his contract.

APPLICATION for a temporary injunction to restrain the defendant for the term of one year from the 26th of January, 1918, from soliciting orders or performing labor in the window cleaning business.

Lionel O. Grossman, for plaintiffs.

Herbert B. Myron, for defendant.

Ross, J. The plaintiffs' claim for injunctive relief is based upon an agreement made between the parties to this action on the 6th day of August, 1917, which agreement contains the following:

" That the said Max Wilmer agrees to faithfully and diligently work for the said National House and Window Cleaning Company as a window cleaner and

to do such work and at such place as directed by the said party of the first part.

" This contract shall remain in full force and effect as long as the said party of the second part shall continue to perform and give satisfactory services as a window cleaner. The said party of the first part is to be the sole judge of said satisfactory work.

". The said party of the second part shall receive the sum of $20.00 Twenty Dollars per week for his services and in consideration agrees that for a period of one year after he leaves the employment of the said party of the first part whether such leaving shall be voluntarily or otherwise, that he will not go into the window cleaning business directly or indirectly for himself in the City of Syracuse, County of Onondaga, State of New York."

It is claimed that from the time the defendant left the employment of the plaintiffs, January 26, 1918, until the commencement of this action, about February 1, 1918, the defendant solicited orders for window cleaning from former customers of plaintiffs. It is not charged in the moving papers, nor was it claimed upon the argument, that the violation of the agreement by the defendant extended beyond the soliciting of orders for his own personal employment. In other words, that he sought and obtained work to be performed by himself.

The plaintiffs allege that they " do a large extensive business as general window cleaning contractors, and that their income has been diminished by reason of the acts of the said defendant, and that it is impossible to estimate the losses which would result to the plaintiffs if the defendant continues to violate his said agreement." The plaintiffs therefore seek the aid of a court of equity in their competition with this laborer who is seeking to support himself and those dependent

upon him by the labor of his own hands. The defendant must be a very energetic and successful window washer to imperil " a large and extensive business " in five days by his unaided efforts.

By the terms of the contract the defendant bound himself to work as a window cleaner for the plaintiffs at such places and in such manner as he was directed. He bound himself to remain in their employ as long as he gave satisfaction and he constituted the plaintiffs the sole judge of the character of his work. He further agreed that for one year after he left their employment he would not go into the window cleaning business directly or indirectly for himself in the city of Syracuse and the only promise which the plaintiffs made was that the defendant was to receive twenty dollars a week for his services. The plaintiffs could have discharged the defendant after one hour's service and he would have been by its terms, if the plaintiffs' construction is correct, prevented from working at his business as a window cleaner for the term of one year. The time-worn simile of the jug handle applies to this contract, and it comes, as it seems to me, within the spirit of the case of *Witmark & Sons* v. *Peters,* 164 App. Div. 366.

The provisions of the contract are too inequitable to justify a court of equity in enforcing its provisions.

Another reason for not granting the relief sought is because the services sought to be enjoined are neither special, unique nor extraordinary. *Kessler & Co.* v. *Chappelle,* 73 App. Div. 447. The instant case is distinguishable from the cases where an employee is threatening to disclose secrets which he has learned in his employer's business, or the case of a defendant selling a business and agreeing as a part of the consideration not to engage within a limited area, or for a limited time, in a similar business.

The cases cited by the plaintiffs' counsel while in some respects similar to the case at bar are all of them, as it seems to me, distinguishable. With others are cited the cases of *Mutual Milk & Cream Co.* v. *Heldt,* 120 App. Div. 795, and *Reynolds Co.* v. *Dreyer,* 12 Misc. Rep. 368; also *Amalgamated Industrial Corp.* v. *Teichholtz,* 177 App. Div. 456. While these cases are somewhat similar to the case under consideration in none of them was the contract under which the plaintiffs claimed challenged, and all of them come within that class of cases where an injunction is granted to restrain a rival who has sold his business to the plaintiff from engaging within an area, and for a time specified, in a similar business.

It is doubtful whether the defendant has violated the apparent terms of the contract. The provision which it is claimed that he had violated is " that he will not go into the window cleaning business directly or indirectly for himself in the City of Syracuse." It seems to me that a reasonable interpretation of this provision means just what it says, that he shall not go into the business in the usual acceptation, of investing capital, or employing others; that he should not start an opposition business, but to construe this provision to mean that he should not work with his hands to support his family and himself is so unreasonable, as has been heretofore stated, that it should not receive the aid of a court of equity.

Motion denied, with costs.