EASTMAN KODAK COMPANY, Plaintiff, *v.* HARRY A. WARREN and POWERS FILM PRODUCTS, INC., Defendants.

(Supreme Court, Monroe Special Term, September, 1919.)

Injunctions — when an injunction pendente lite to enforce restrictive covenants of employment will not be granted — actions — equity will restrain employee from disclosing secrets of manufacture.

Where the only inducements used to secure the employee of a competitor, hired for an indefinite period, were higher wages, better conditions and increased opportunities of advancement, and it appears that no fraudulent or unlawful means were used for that purpose, an injunction *pendente lite* will not be granted to restrain such soliciting.

Where it is not necessary to the protection of an employer, and the enforcement of a covenant of one of its employees not to enter the employ of a competitor within the United States except Alaska for two years after his employment has legally ceased would be unreasonable and contrary to well-established principles of equity, an injunction *pendente lite* to enforce said covenant will be denied.

Where in such case the employer has substantially a monopoly of the production of motion picture raw film stock and the occupation of the employee, an emulsion coater, can be filled readily from other employees in like occupation, an injunction to enforce the negative covenant will be denied.

Though the restrictive covenant of employment will not be enforced, the court will restrain the employee from making disclosures of secrets of manufacture communicated to him in confidence and which are important to the interests of the employer.

MOTION upon notice and affidavits to vacate a temporary injunction granted *ex parte*.

Ingraham, Sheehan & Moran (George L. Ingraham, of counsel), for motion.

Hubbell, Taylor, Goodwin & Moser (W. S. Hubbell, of counsel), opposed.

RODENBECK, J. This action is brought for an injunction restraining the defendant Powers Film Products, Inc., among other things, from soliciting any of the employees of the plaintiff and particularly from employing the defendant Warren, a former employee of the plaintiff, and restraining the defendant Warren from working for the defendant company and from disclosing any of plaintiff's secrets of manufacture. The controversy relates especially to the manufacture of motion picture film raw stock used by producers of motion pictures. The plaintiff is engaged in the manufacture of this stock for the trade generally, while the defendant company is manufacturing it for picture producing companies interested in its corporation. The plaintiff is the largest manufacturer of raw film stock in the world and since 1914 has made practically all of the raw film stock used in this country and much of that which was used abroad. The defendant company claims in its prospectus that the plaintiff sold approximately 750,000,000 feet of such raw stock a year and that the greater portion of its annual profits of $14,500,000 came from this source. So extensive had the plaintiff's business in photographic supplies

become that it was declared by the federal courts to be an illegal monopoly under the Sherman Anti-Trust Law. *United States* v. *Eastman Kodak Co.,* 226 Fed. Repr. 62; 230 id. 522. The defendant company claims that it was organized by persons interested in the picture producing end of the motion picture business and that its output is all used by companies with which the president of the defendant company is connected; that prior to the European war these corporations imported large quantities of motion picture film raw stock from Europe, paying for this and other raw stock as high as $75,000 a week, and that after the outbreak of the war the supply from abroad was entirely cut off and that the defendant company was organized to supply the needs of these companies. The defendant company is occupying a plant formerly owned by the Sensitized Products Company, another company which sought to produce raw film stock in the city of Rochester, and the coating machine used by the defendant company is the same one formerly used by the Sensitized Products Company. The defendant company, it is claimed by the plaintiff among other things, is using illegal methods to secure plaintiff's employees and has employed the defendant Warren, and that the defendant Warren is in possession of secrets of manufacture which he should be restrained from disclosing. The defendant company claims the right to obtain its help from any source by any lawful means, that the coating of film is not a secret process but is well known, that the defendant Warren has none of plaintiff's secrets of trade, has disclosed none and that the effort of the plaintiff to secure an injunction in this action is directed toward preserving a monopoly by unlawfully attempting to restrict the employment of its help after the termination of their employment. It attacks as unlawful the pro-

vision in defendant Warren's contract with plaintiff, made October 29, 1915, under which he agreed that for a period of two years after leaving the employ of the plaintiff, he would not engage or be employed, within the United States except Alaska, in any photographic business, and as tending to create a servitude of employment and perpetuate what the federal courts have condemned. A temporary injunction was granted *ex parte* with the issuance of the summons and this is a motion upon notice and affidavits to vacate the same.

The plaintiff has not made out a case for an injunction against the defendant company. The allegations of fact set forth in the complaint, stripping the complaint of its conclusions of law which are not to be considered on this motion (*De Jong* v. *Behrman Co.,* 148 App. Div. 37), do not show that the defendant company with respect to soliciting employees of plaintiff, did anything that it did not have the legal right to do. There is no legal restraint upon the use of lawful means to secure help from any source. These means consist of offers of higher wages, improved conditions and better prospects of advancement and any restraint in this respect would seriously interfere with the rights of employers and employees alike and seriously affect the development of new enterprises and the growth and well being of society. It is a matter of common knowledge that these means are used every day and any restraint by the courts would interfere with the natural law of supply and demand. The allegations of fact in the affidavits submitted by the plaintiff as to the conduct of the defendant company in relation to soliciting plaintiff's employees describe nothing that is unlawful, and these allegations and those in the complaint are not strengthened by any characterization of them by the plaintiff as unwarranted or unlawful or as having been committed with any unlawful

Supreme Court, September, 1919. [Vol. 108.

design or intention. Warren was not under contract for a definite period, being employed from week to week, and had the right to quit whenever he desired to do so. When he left the plaintiff's factory he was not guilty of any breach of his contract. There is no allegation in the complaint or in the affidavits that the other employees claimed to have been approached were employed for a definite period. The plaintiff seeks to hold these employees to their negative covenants and otherwise and yet has given them no definite period of employment except from week to week. The defendant Warren says that he applied to the defendant company for work and was not solicited. No relief will be granted for alleged enticement of help where the employee is not under a definite period of employment (*Posner Co.* v. *Jackson,* 223 N. Y. 325, 331), and even then it must appear that the means used were fraudulent or otherwise wrongful amounting to a tort. *De Jong* v. *Behrman Co., supra.* The right to solicit help of another employer is one of which undoubtedly the plaintiff has availed itself in the past and if not fairly and liberally enforced by the courts would create a servitude of employment that would be intolerable and would soon lead to serious consequences. The claim to a temporary injunction restraining the defendant company from using any of the trade secrets of plaintiff or disclosing any communicated to it by defendant Warren, is equally unfounded as there is no allegation that there has been any such use or disclosure but, on the contrary, the allegations on the part of the defendants are that they know no such secrets and that none have been disclosed. To entitle plaintiff to such an injunction against the defendant company it must at least allege if not shown by substantial facts that secrets of manufacture which have been learned have actually been disclosed. In the original complaint it

was not even alleged that the defendant Warren had learned any of plaintiff's secrets of manufacture but in the amended complaint this omission is supplied. The defendant company contends that the work in which Warren was engaged, that of coating film, is done by a machine and is a simple and not a secret process and this is borne out by the statements of Warren himself. Under the complaint and the allegations in the affidavits the plaintiff is not entitled to a temporary injunction restraining the defendant company from soliciting plaintiff's employees as prayed for or from using or disclosing alleged secrets of manufacture since it does not appear that any were imparted to it.

The injunction against the defendant Warren's working for the defendant company is not sustained by the proofs submitted and should be eliminated from the restraining order. The claim of plaintiff is based upon the defendant Warren's contract of employment. The one made December 28, 1911, contained no clause prohibiting his employment after the termination of his contract but that made October 29, 1915, provides as stated that he will not work within the United States except Alaska for any manufacturer of photographic supplies within two years after leaving plaintiff's employ and that he will not reveal any of plaintiff's secrets of manufacture. The two-year limitation was undoubtedly designed to preserve with more certainty plaintiff's secrets of manufacture but it also serves to debar the defendant Warren from using the skill and experience which he acquired in his employment and which are not covered by the prohibition against revealing secrets of manufacture. The defendant Warren was employed by the plaintiff for a period of about ten years and by the clause in the contract referred to he is prohibited for two years from earn-

Supreme Court, September, 1919.        [Vol. 108.

ing a livelihood in his chosen occupation except in Alaska or abroad. It is no answer to the harshness of this provision to say that he can work at something else. Employees such as he cannot easily shift from one occupation to another and such a provision operates to keep employees bound hand and foot to their employers so that they cannot better their occupational circumstances and is for that reason a serious restraint upon employment. The common law prohibited such contracts and this rule has been modified only to a limited extent. The modification, however, has not gone to the extent of legalizing all contracts, though mutual in their terms and based upon a consideration, which limit the right of an employee to enter employment in the same line of business to which the contract relates. "As a general rule, equity will not interfere to restrain by injunction the violation of a restrictive covenant in relation to personal service." *Strobridge Litho. Co.* v. *Crane,* 12 N. Y. Supp. 898, 899. There are certain exceptions in which equitable relief by injunction will be granted, but in order to secure that relief it must be plain that the case comes within the exceptions and does not fall within the general rule which is designed to protect society against the evils of unjust and unreasonable contracts of employment. The law favors the growth of new and additional enterprises and is opposed to a monopoly of manufacture, trade, business or employment. It encourages the fullest and fairest opportunity for business enterprises to develop and the greatest freedom of action of employees in seeking to better their employment and condemns both by the general opinion of judges represented by the common law, and by public opinion represented by federal and state statutes, any combination operating to interfere with the free development of these principles.

After the bulk of the cases upon this subject have been examined, the general conclusion is irresistible that a temporary injunction will be granted in this class of cases only where it is necessary, reasonable and equitable to protect the interest of a covenantee. "A party is never entitled to an injunction as a matter of right. Whether a court of equity will exercise its power in granting such relief always depends upon the facts peculiar to each case. It will never be granted unless the court, in the exercise of a sound discretion, can see that such relief is necessary in order to prevent irreparable injury." *Mahler Co.* v. *Mahler,* 160 App. Div. 548. Upon this broad principle all of the cases may be harmonized although there may appear in isolated cases to be an apparent error of judgment in applying this principle. The principle upon which equitable relief is denied and the absence of necessity and the lack of reasonableness which forecloses injunctive relief varies with the facts and circumstances of each case. In some cases the rank of the employee is emphasized and in other cases the absence of any other relief or the damage that may be occasioned is the determining factor. " Damage done, rather than the rank of the employee," said Judge Pound in one case, will control the right to injunctive relief in these cases. *Witkop & Holmes Co.* v. *Great A. & P. Tea Co.,* 69 Misc. Rep. 90. In some cases the contract has been refused enforcement because of its want of reciprocal obligations (*Lawrence* v. *Dixey,* 119 App. Div. 295, 298; *Dockstader* v. *Reed,* 121 id. 846; *Star Co.* v. *Press Pub. Co.,* 162 id. 486) or where the provisions of the contract sought to be enforced were harsh and inequitable. *Gilbert* v. *Wilmer,* 102 Misc. Rep. 388; *Witmark & Sons* v. *Peters,* 164 App. Div. 366; *Tolman* v. *Mulcahy,* 119 id. 42; *Mahler Co.* v. *Mahler, supra.* Other cases have refused enforcement of such a cove-

Supreme Court, September, 1919. [Vol. 108.

nant because a substitute could be readily obtained for the delinquent employee. *W. J. Johnston Co.* v. *Hunt,* 66 Hun, 504; *Dockstader* v. *Reed, supra.* In still other cases the denial of the relief was based upon the conclusion that the negative covenant against accepting other employment was void. *Witkop & Holmes Co.* v. *Boyce,* 61 Misc. Rep. 126; *Gilbert* v. *Wilmer, supra; W. J. Johnston Co.* v. *Hunt, supra.* In all of the cases where relief has been granted by injunction under clauses similar to that involved in this case, the court reached the conclusion that the covenantee was entitled to relief because under the facts and circumstances of the case it was necessary, reasonable and equitable that the relief should be granted. Thus covenants made upon selling a business not to enter into a competing business have been sustained as such relief was necessary to preserve in the vendee the fruits of the sale. *Tode* v. *Gross,* 127 N. Y. 480; *Wood* v. *Whitehead Bros. Co.,* 165 id. 545; *Diamond Match Co.* v. *Roeber,* 106 id. 473. Covenants against soliciting special lists of customers of a former employer have been sustained uniformly as otherwise an employee might seriously impair if not destroy the business of his former employer. *Witkop & Holmes Co.* v. *Great A. & P. Tea Co., supra; Davies* v. *Racer,* 72 Hun, 43; *Witkop & Holmes Co.* v. *Boyce, supra; Mutual Milk & Cream Co.* v. *Heldt,* 120 App. Div. 795; *Mutual Milk & Cream Co.* v. *Prigge,* 112 id. 652; *New York Wet Wash Laundry Co.* v. *Unger,* 170 id. 761; *Peoples Coat, Apron & Towel Supply Co.* v. *Light,* 171 id. 671; *Eastern New York Wet Wash Laundry Co.* v. *Abrahams,* 173 id. 788. Persons performing unique, special or extraordinary services, such as great actors, artists and musicians, have been restrained since their places cannot be filled and injunctive relief is usually the only substantial relief that can be obtained. *Lumley* v. *Wagner,* 1

De G., M. & G. 604, and similar cases. Likewise persons who discharge important relations toward a business enterprise, such as managers and experts, will be enjoined as their places cannot readily be supplied. *McCall Co.* v. *Wright,* 198 N. Y. 143; *Magnolia Metal Co.* v. *Price,* 65 App. Div. 276; *Todd Protectograph Co.* v. *Hirschberg,* 100 Misc. Rep. 418. In many other cases that do not fall under these well-recognized heads the courts have restrained the employee from disclosing or using trade or confidential information but have refused to restrain him from entering other employment although contrary to the terms of his contract. *Witkop & Holmes Co.* v. *Boyce, supra; Gilbert* v. *Wilmer, supra; W. J. Johnston Co.* v. *Hunt, supra; Tolman* v. *Mulcahy, supra; New York Wet Wash Laundry Co.* v. *Unger, supra; Clark Paper & Mfg. Co.* v. *Stenacker,* 100 Misc. Rep. 173; modified, 183 App. Div. 915. The question in this case therefore is, assuming this clause of the contract to be valid, whether or not a temporary injunction is a just and proper exercise of the discretion of the court and this depends upon whether or not such relief is necessary, reasonable and equitable under the facts and circumstances of the case.

The facts in this case show that the services rendered by the defendant Warren are not such that they cannot be replaced readily by the plaintiff, and that the enforcement of the restrictive covenant as to employment is unnecessary to protect the plaintiff. It appears that the plaintiff has in its extensive plant thirteen assistant coaters, which was the position occupied by the defendant Warren, with headcoaters, the number of which is not stated. The defendant company has been producing motion picture film and of course has emulsion coaters just as the plaintiff has these coaters in its plant. There are other film manufacturers, all of whom must employ emulsion coaters, and the same

44

Supreme Court, September, 1919.     [Vol. 108.

line of work is performed by those who are engaged in the manufacture of photographic paper in which there is a much greater competition than there is in the manufacture of motion picture film. It is apparent that there must be in this country and in this state a large number of men who are familiar with the work of coating photographic paper and motion picture film and that this employment is not a unique, special or extraordinary employment or even one requiring individual or peculiar qualifications as those terms are understood in the law of this case. A coater in a photographic establishment does not sustain the relation to that establishment that a great chemist or a great manager or other expert does toward a manufacturing plant. He is for the purposes of the controversy in this action, so far as the proofs show and for the purposes of temporary injunctive relief, an ordinary and usual employee. The affidavits show that the process of coating is a comparatively simple one and that the plaintiff can readily secure all the assistant coaters it needs from its other departments and that the enforcement of the restrictive covenant is not necessary to its protection in this respect. Nor is it necessary that the plaintiff should have a specific performance of the negative covenant against other employment to protect its secrets of manufacture. The defendant Warren cannot be enjoined from using his skill and experience and these secrets can be revealed, if there is a disposition to do so, quite as effectually without as with employment on his part.

The enforcement of the restrictive covenant under the circumstances of this case, considering the interests of the parties and the public, would also be unreasonable. 13 C. J. 473. The law is based upon reason and common sense and not upon arbitrary rules. In the first place the defendant company has gone beyond

the experimental stage of the manufacture of motion picture film and is actually producing large quantities of such film. It alleges that it is producing 3,000,000 feet per month and that it has orders for more than it can fill. It has been operating its plant for some time, has a very large investment in it and claims to be producing as high a grade of film as the plaintiff. The plaintiff, on the other hand, emphasizes that it occupies 150 acres of land and has 100 or more buildings, with 8,000 or more employees, and yet contends that its business will be affected if an assistant emulsion coater earning twenty-six dollars a week with some additional allowances is permitted to work for a competitor. The original complaint states that since 1914 the plaintiff has manufactured practically all of the motion picture film, amounting to millions of feet per month, used in the United States and a large amount of motion picture film used elsewhere. The amended complaint omits this statement but it is by reference repeated in one of the affidavits and this motion is made upon both the original and the amended complaint and the moving papers on this motion allege that the plaintiff is and has been declared by the courts to be a monopoly and that the contract under review in this case is designed to perpetuate that monopoly. It is evident that the plaintiff's business will not be seriously affected by any competition of the defendant company and that this case does not come in that class of cases where by reason of special circumstances the competition was unfair. The defendant Warren is only an assistant coater receiving a salary with some allowances which brings the amount up to thirty dollars a week which is not more than an ordinary skilled mechanic obtains in any line of work. It is hardly to be presumed that a man who has been employed in a factory such as the plaintiff's for a period of ten

years and receives such compensation is possessed of many of the secrets of manufacture of which the plaintiff claims to be the sole owner. He operated a coating machine at times and at other times he was a mere assistant. This process of coating consists of placing a sensitized emulsion upon a celluloid base by means of a machine. It is evident that other manufacturers of photographic paper and film must have occasion to use some sort of coating machine and must employ coaters to operate those machines. It appears therefore that there are coating machines in general use so that all that the plaintiff can claim is that there are some special features about its coating machine that are not generally known and that there is some manipulation or method of coating with its machine that is not known outside of the factory. The defendant company too has its coating machine and its coaters and it is likely that it also has special features for doing this work, but both companies claim to be producing a product which is available for motion pictures by whatever means the result may be attained. The defendant company may use the defendant Warren in the coating of its film without the use in the slightest respect of any knowledge that he may have of the special methods of coating in the plaintiff's factory and he cannot be restrained from using his skill and experience wherever obtained. *Peerless Pattern Co.* v. *Pictorial Review Co.,* 147 App. Div. 715; *Scott & Co., Inc.,* v. *Scott,* 186 App. Div. 518.

The enforcement of the restrictive covenant would also be contrary to well-established principles of equity. The relief sought against the defendant Warren, restraining him from entering the employ of a competitor, is in the nature of a specific performance of his contract. The plaintiff in this action asks the court by injunction to compel him to live up to his

contract. Where the employee is under contract for a definite term and quits before the term expires the nature of the relief sought by specific performance is quite apparent and to a modified degree the same end is sought where the contract has expired and the covenant applies to a limited period thereafter. The employer cannot compel the employee to continue to work for him any more than he can be forced to retain his services, but by seeking to restrain him from entering the employment of a possible competitor he is endeavoring to preserve to himself so far as he can the terms of his contract. The conscience of the court is not stirred by the appeal of one who has broken the terms of his employment and quit before the end of his contract as in the *Todd* and *Clark Paper & Manufacturing Company* and other cases, but its sympathies go out to a man who has not broken his contract and is nevertheless barred without sufficient reason from earning a livelihood in his chosen occupation. Specific performance being the gist of the action, the equitable relief by injunction may be granted where the employer cannot secure a substitute and has no adequate remedy, but where a substitute can be obtained he does not need the unusual remedy by injunction but can secure adequate relief by way of damages, if any have been sustained. For this reason the remedy by injunction is usually confined to cases where the service contracted for is unique, special and extraordinary or special and individual which the employer cannot obtain at all or cannot readily obtain and is not extended to positions like that of defendant Warren, which can be easily supplied. Restrictive clauses in contracts of employment such as the one in suit are not enforced as a matter of course and when the facts show as they do in this case that the covenant is

unnecessary, unreasonable and inequitable, temporary relief by way of enforcement will not be granted pending a trial until the facts relating to the nature of the employment and the existence of the alleged secrets of manufacture can be determined.

While the restrictive covenant of employment in such a case as the one at bar will not be enforced, the employee nevertheless will be restrained temporarily from disclosing alleged secrets of manufacture or confidential information until the case can be tried. This course does the employee no harm and protects the employer in the secrets of his business. The right to this relief does not depend upon the contract and is wholly independent of its validity. Courts of equity will restrain a party from making disclosures of secrets communicated to him in a confidential employment and it matters not in such cases whether the secrets be trade secrets or secrets of title, or any other secrets of the party important to his interest. Story Eq. Juris. § 952; 1 High Inj. (4th ed.) § 19. This doctrine has been applied in numerous cases to secret processes or formulæ of manufacture. *Eastman Kodak Co.* v. *Reichenbach,* 79 Hun, 183; *Tode* v. *Gross, supra; Tabor* v. *Hoffman,* 118 N. Y. 30; *National Gum & Mica Co.* v. *Braendly,* 27 App. Div. 219; *Little* v. *Gallus,* 39 id. 646; *Eastern Extracting Co.* v. *Greater New York Extracting Co.,* 126 id. 928. This view was taken by the Appellate Division of the fourth department in the case of *Clark Paper & Mfg. Co.* v. *Stenacker, supra,* where the court held that the defendant should be restrained from soliciting orders for plaintiff's competitor from customers of the plaintiff and from disclosing the methods or processes of plaintiff's business and the names of its customers but not from entering the employ of a competitor. *Mahler Co.* v. *Mahler,*

*supra.* In *Witkop & Holmes Co.* v. *Boyce, supra;* affd., 131 App. Div. 922, the court granted a temporary injunction restraining the defendant from interfering with plaintiff's business and making use of plaintiff's list of customers and from soliciting orders from them and said with reference to the clause in the contract prohibiting the defendant from engaging to work for a competitor for a period of two years after the termination of the employment, that " the contract will undoubtedly be refused enforcement in a court of equity." P. 135. In *New York Wet Wash Laundry Co.* v. *Unger, supra,* where a restrictive covenant prohibited an employee from accepting similar employment in a certain locality for one year, the only relief granted was an injunction restraining him from soliciting or collecting wash from any person who was a customer of the plaintiff while the defendant was in its employ. There are cases in which the restrictive covenant against entering the employ of another was enforced where the employee violated his contract by leaving before the expiration of his term of employment which is a strong equitable feature not involved in the present case where it is sought to enforce such a covenant after the term of employment has legally ceased. There is also a wide distinction between those cases where the employee was an important factor in the business and his competition threatened the stability of the business and the present case where the person sought to be restrained is an ordinary employee in a great corporation.

The temporary injunction herein should be modified and vacated except to enjoin the defendant Warren from disclosing any of plaintiff's secrets of manufacture relating to apparatus, machinery, processes, appliances, methods, manipulations, operations or

otherwise which he may have learned in connection with his employment by the plaintiff.

Motion granted as aforesaid, with ten dollars costs of motion to each of the defendants to abide the event.

Motion granted, with ten dollars costs to abide event.